602 A.2d 402

**In re LOTTO JACKPOT PRIZE OF DECEMBER 3, 1982 WON BY Nicholas H. MARIANOV.**

**Appeal of COMMONWEALTH of Pennsylvania, DEPARTMENT of REVENUE, PENNSYLVANIA STATE LOTTERY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1991.

Decided Jan. 9, 1992.

Jullia A. Sheridan, Assistant Counsel, for appellant.

Robert Rade Stone, for appellee.

Before PELLEGRINI and BYER, JJ., and NARICK, Senior Judge.

BYER, Judge.

This case presents a question of statutory construction involving section 8 of the State Lottery Law, 72 P.S. § 3761–8 (supp.1991)[1], which prohibits the assignment of a right to a lottery prize but provides that payment of a prize

---

1. Act of August 26, 1971, P.L. 351, § 8.

may be paid to a person other than the winner "pursuant to an appropriate judicial order." The precise issue before us is whether the quoted language provides a court with discretionary power to permit a voluntary assignment which otherwise would violate the general prohibition of such assignments.

## I. BACKGROUND

Appellee Nicholas Marianov won $3,460,973.04 in the Pennsylvania Lotto Jackpot drawing on December 3, 1982. This prize is payable in 21 annual installments of $164,-808.24, less taxes.

On August 14, 1990, Marianov entered into an agreement with two "buyers."[2] The agreement, which described Marianov as "seller," provided that Marianov "sells, assigns and transfers to Buyers equally and Buyers hereby purchase from Seller, all of Seller's remaining right, title and interest in said lottery prize for the purchase price of $930,000.00." The agreement was contingent on Marianov obtaining an order from the Court of Common Pleas of Allegheny County approving the transaction. The agreement further provided that $25,000.00 of the purchase price would be paid upon execution of the agreement, with the balance of $905,000.00 to be paid within 38 days after final court approval of the transaction and verification that the insurance carrier which issued the annuity contract for payment of the prize installments had changed the beneficiary under the contract from Marianov to the buyers.[3]

On August 22, 1990, Marianov filed in the Court of Common Pleas of Allegheny County a "Petition to Approve Assignment of Lottery Prize," asserting that section 8 of

---

2. One buyer, Anka Palitz, was a resident of Allamuchy, New Jersey. The other buyer Joseph L. Brady, was a resident of Allegheny County, Pennsylvania, Marianov's county of residence.

3. The agreement also required Marianov to obtain an opinion letter from the chief counsel of the Department of Revenue stating that the Commonwealth would be liable for payment of the annuity in the event that the insurance company became insolvent and unable to make the payments.

the State Lottery Law, 72 P.S. § 3761–8 (supp.1991), provided the court with authority to approve such a transaction. Marianov attached the agreement to the petition.

The Department of Revenue moved to quash the petition. The Department of Revenue's motion asserted that the voluntary sale of Marianov's right to his prize violated section 8 of the State Lottery Law and that an order approving a voluntary sale would not be "an appropriate judicial order" under the statute.

There were no disputed issues of fact. Therefore, common pleas did not conduct an evidentiary hearing, but considered the case solely on the basis of the petition and the Department of Revenue's motion.

On August 22, 1990, the court of common pleas entered an order granting the petition, and the Department of Revenue filed a notice of appeal to this court. In its opinion in support of the order, the court construed section 8 of the State Lottery Law as permitting an assignment where authorized by the court. The court further explained:

> The statute in question authorizes assignments pursuant to 'an appropriate judicial order.' This phrase is nowhere defined. Further, the State Lottery Commission has failed to promulgate any rules establishing the scope of when it is appropriate for a court to approve an assignment.
>
> Court authorization of an assignment is clearly a discretionary measure. We believe that a judge can properly exercise his discretion in determining whether a purported assignment is reasonable or in the best interests of the parties involved, including both the Commonwealth and the prize winner. The Court has the power to disapprove an assignment if it appears to be unduly burdensome on the State or not in the best interests of the prize winner. The Court has the ability to reject an assignment when this action appears necessary to protect the lottery winner from his own human frailties. Similarly, the Court is free to reject an assignment that appears to be unduly burdensome on the Commonwealth, as where the assign-

ment is for only a temporary time period, or where multiple assignments are attempted. While it is true that a winner could petition the courts for an assignment for any reason, however frivolous, that assignment can only be approved by an appropriate court order. It would surely be inappropriate to approve an assignment simply on the whim of a prize winner.

In the present case, the lotto winner is presently unmarried and has no children. He is to receive a lump sum payment of cash in exchange for his interest in the prize winnings. Petitioner obtained the services of an attorney to review his actions. This assignment is not being made to a collection agency or finance company, nor is it a temporary assignment. The State has made no showing as to how this transfer would be unduly burdensome. There has been no questioning of Petitioner's mental competency to understand the nature of his agreement. Upon reviewing the totality of the circumstances in this case, we believe there is no reason in law or logic that Petitioner should not again be a winner.

(opinion, 6–9).

Although we would find no fault with the court's well reasoned statement of the factors which would control the exercise of discretion if that were what the statute provided, we do not construe this statute as authorizing assignments conditioned upon discretionary judicial approval. More fundamentally, we hold that common pleas court lacked subject matter jurisdiction over this case, because we have exclusive original jurisdiction of such actions against the Commonwealth government.

## II.   SUBJECT MATTER JURISDICTION

Although the Department of Revenue failed to object to subject matter jurisdiction, even on appeal, the absence of subject matter jurisdiction is not a waivable defect. Instead, we are obliged to consider the question *sua sponte.* We have done so, and we conclude that common pleas court did not have subject matter jurisdiction of this case.

■ The General Assembly provided in 42 Pa.C.S. § 761(a) that the Commonwealth Court has original jurisdiction of any action by or against the Commonwealth government unless original jurisdiction expressly is vested in another tribunal. Furthermore, where the action is against the Commonwealth government, the General Assembly mandated in 42 Pa.C.S. § 761(b) that our original jurisdiction is exclusive. *See Keitt v. Ross*, 17 Pa.Commonwealth Ct. 183, 331 A.2d 582 (1975).

Marianov's petition commenced an action against the Commonwealth government.[4] There is no statute which expressly provides the courts of common pleas or any other tribunal with original jurisdiction over an action of this nature against the Commonwealth government. Therefore, the Court of Common Pleas of Allegheny County lacked subject matter jurisdiction and should not have entertained this case.

■ Although we could reverse for lack of subject matter jurisdiction and require Marianov, if he so desires, to commence an action in this court by filing a petition for review addressed to our original jurisdiction, we shall not do so under the circumstances of this case. This action involves no disputed facts, but purely a question of law. Therefore, we do not have the problem which would exist if common pleas had conducted an evidentiary hearing. Although the papers would be in slightly different form if Marianov had followed the proper procedure and filed a petition for review addressed to our original jurisdiction, nothing would be materially different from what we now have before us.

4. Although Marianov did not name the Commonwealth as a party in the caption of his petition, the question of whether an action is or is not against the Commonwealth government cannot be controlled by the caption. Marianov chose to caption the case "in re" instead of "plaintiff vs. defendant," but he did serve the Commonwealth. Service was by an improper method, but the Commonwealth waived that particular defect by appearing without objection to service. Because Marianov seeks to compel the Commonwealth to recognize a voluntary assignment, this case essentially is a mandamus action, seeking to compel the department of revenue to recognize an assignment which the department contends that the assignor has no right to make.

The parties have filed briefs addressing the legal questions in connection with this appeal, and these would be no different if this case were before us in our original jurisdiction instead of our appellate jurisdiction.

Under these limited circumstances, we hold that we may treat the record on appeal and the briefs as if the case were commenced in this court by petition for review addressed to our original jurisdiction. This will better serve the interests of justice and judicial economy than would the alternative, under which we undoubtedly would hold the appellate briefs in abeyance until the filing of a petition for review and the scheduling of argument based on the same briefs we have before us now. However, this should not be taken as condoning the commencement of an action in common pleas court where original jurisdiction is vested exclusively in this court. It always is the responsibility of counsel to be certain that an action is commenced in the appropriate tribunal, and we would hope that counsel for the Commonwealth and its agencies would be as attentive to such jurisdictional issues as counsel for parties commencing actions against the Commonwealth government.

## III. CONSTRUCTION OF STATE LOTTERY LAW SECTION 8

█ As noted previously, this case is controlled by section 8 of the State Lottery Law, 72 P.S. § 3761-8, which provides:

[N]o right of any person to a prize shall be assignable, except that payment of any prize drawn may be paid to the estate of a deceased prize winner, and, except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled. The secretary shall be discharged of all further liability upon payment of a prize pursuant to this section.

Essentially, Marianov contends that the phrase "appropriate judicial order" in section 8 of the statute grants him the right to commence a proceeding requesting a court to approve a private contractual assignment of his right to a

prize and requires the Department of Revenue to recognize such a court-approved assignment notwithstanding the preceding language in section 8 prohibiting the assignment of a right to a prize. We cannot agree.

The State Lottery Law nowhere provides that a winner of a prize may sell or otherwise assign the right to a prize. Instead, section 8 expressly prohibits such transactions. We could not properly construe the phrase "appropriate judicial order" as creating an exception which effectively would swallow this general prohibition. That would be contrary to the General Assembly's direction in 1 Pa.C.S. § 1922(2) that in construing a statute, we must presume "[t]hat the General Assembly intends the entire statute to be effective and certain." Instead, we hold that in context, the language "appropriate judicial order" refers to an order in some other proceeding in which a court may make a disposition of the lottery prize as a remedy.

For example, the right to receive lottery payments is subject to garnishment or attachment execution. *Smith, Inc. v. Belle*, 35 D. & C.3d 563 (1985). Therefore, an order entering judgment against the garnishee and directing payment to the judgment creditor would be an "appropriate judicial order" for purposes of section 8 of the State Lottery Law. *Id.*

Similarly, the right to a lottery prize may be included in marital property for purposes of equitable distribution. *See Nuhfer v. Nuhfer*, 410 Pa.Superior Ct. 380, 599 A.2d 1348 (1991). Therefore, an order directing payment of lottery winnings to a spouse as part of equitable distribution would be an "appropriate judicial order" for purposes of section 8.

There are other examples of what might be an "appropriate judicial order" in this context. These would include orders in bankruptcy proceedings which direct payment of lottery prizes to a trustee in bankruptcy or to creditors. The phrase also would encompass certain orders entered in support proceedings brought by a spouse or child of a prize winner. "Appropriate judicial order" also would include an order in an action by a plaintiff who claims that a person

fraudulently claimed a lottery prize in his or her own name by failing to include the plaintiff's name on the back of the ticket when claiming a prize. *See* 61 Pa.Code § 811.15.[5]

If we were to construe "appropriate judicial order" in the manner suggested by Marianov, we effectively would rewrite the statute by converting the prohibition against assignment into a right to make an assignment with leave of court. It "is not our stead to engraft upon legislation provisions which the General Assembly did not consider or did not see fit to enact." *In re J.S.*, 526 Pa. 418, 426, 586 A.2d 909, 913 (1991). We believe that the General Assembly would have used different language in section 8 of the State Lottery Law if it had intended either to provide for a right of assignment subject to court approval or to delegate to the judiciary discretion to determine the circumstances pursuant to which lottery prize winners could make private assignments of their rights. *See Black v. Billy Penn Corp.*, 72 Pa.Commonwealth Ct. 628, 632, 457 A.2d 192, 193 (1983).

Instead, the express language of section 8 is consistent with an intent by our General Assembly to prohibit assignments but to make clear that the Department of Revenue could pay lottery prizes to persons other than the holder of the original right to the prize when a court in a proper proceeding so orders. If the language in question had been intended to authorize voluntary assignments, there would be little reason for the last sentence of section 8 discharging the secretary of revenue from liability for making payment to a third person pursuant to a court order. Furthermore, we can discern no good reason why the General Assembly would want to make a court the arbiter of whether an individual prize winner could assign a prize, particu-

5. In these cases, original jurisdiction properly would be in a court of common pleas (e.g., divorce or garnishment proceeding) or in the federal courts (e.g., bankruptcy) because the Commonwealth's involvement in such cases would be merely as a stakeholder with respect to administration of a remedy in an action between other parties in which the Commonwealth has no direct interest. *See Millick v. Millick,* 140 Pa.Commonwealth Ct. 252, 592 A.2d 788 (1991).

larly where the General Assembly has provided no standards pursuant to which such a determination should be made. In our opinion, the absence of such standards is a strong indication that the construction of the statute urged by Marianov is not what the General Assembly intended, particularly in view of the express prohibition of assignments.

Our conclusion is bolstered by the fact that other states with similar statutes have reached the same result as we do in this case. *See Converse v. Washington State Lottery Commission,* 56 Wash.App. 431, 783 P.2d 1116 (1989); *State ex rel. Meyers v. Ohio State Lottery Commission,* 34 Ohio App.3d 232, 517 N.E.2d 1029 (1986); *McCabe v. Director of New Jersey Lottery Commission,* 143 N.J.Super 443, 363 A.2d 387 (1976).[6]

Therefore, we vacate the order of the court of common pleas and, treating the papers as if appellee had filed a petition for review addressed to our original jurisdiction, dismiss the petition.

## ORDER

For the reasons expressed in the accompanying opinion, we vacate the order of the Court of Common Pleas of Allegheny County for lack of subject matter jurisdiction. Treating the papers as if appellee had filed a petition for

6. The court of common pleas' opinion, albeit filed in the absence of jurisdiction, persuasively argues that there might not be any good or logical reason to prohibit the voluntary assignment in this case, particularly where a judge approves the transaction after considering all the circumstances and concludes that the lottery winner has not been the victim of designing persons and that nobody would suffer any detriment as a result of the transaction. However, it is the province of the General Assembly to make the rules in this area, and those rules must be followed even if a court or judge might consider them unwise, unnecessary or arbitrary when applied to a particular fact situation, in the absence of any basis to hold that the statute is invalid. There is nothing invalid about a legislative choice to make a general prohibition of voluntary assignments of Pennsylvania lottery prizes.

review addressed to our original jurisdiction, we dismiss the petition.

This decision was reached and opinion adopted before the conclusion of Judge BYER's service.