## Fender v. Trapuzzano

*T. Lawrence Palmer,* for plaintiff.

*Richard F. Rinaldo,* for defendant Sylvia A. Trapuzzano.

*Donald P. Minahan,* for defendant Pennsylvania State Lottery.

RODGERS, *S.J.,* August 4, 1992—This case is before the court en banc on motion of the defendants, Sylvia A. Trapuzzano, and the Pennsylvania State Lottery, to dismiss, because this court lacks subject matter jurisdiction.

On April 26, 1989, the Super 7 drawing of the Pennsylvania State Lottery was worth in excess of $115 million. The defendant, Sylvia A. Trapuzzano, presented one of 14 winning tickets to lottery officials, each winning ticket being worth in excess of $8 million, payable by the Pennsylvania State Lottery in 26 annual payments of $317,524.67. The plaintiff, Gary P. Fender claimed that the defendant, Sylvia A. Trapuzzano, with whom he had

lived for about five years, had promised to share the proceeds equally, which the defendant Trapuzzano denied.

After an extended trial, the jury awarded the plaintiff, Gary P. Fender 50 percent of the proceeds collected by Sylvia Trapuzzano to the date of the jury's verdict, which the parties agree amount to $476,287 and, in addition, 50 percent of the 23 annual payments remaining.

In addition to seeking post trial relief, the defendant Trapuzzano now seeks to nullify the jury's verdict on the grounds that the Commonwealth Court of Pennsylvania has exclusive original jurisdiction in this case because the Pennsylvania State Lottery is also party defendant and is an indispensable party to this action.

The Pennsylvania State Lottery has joined in the motion of Trapuzzano to dismiss because of lack of subject matter jurisdiction in this court.

For reasons hereinafter stated, the motion of the defendants to dismiss on grounds of lack of subject matter jurisdiction is denied.

At the trial of this matter, the parties, by their then counsel, had no difficulty in defining the issue to be decided by the jury.

In his opening statement, counsel for the plaintiff, Gary P. Fender, said this:

"This is really a very, very simple case. It involves a claim by my client, that while he, Gary Fender, and the defendant, Sylvia Trapuzzano, were living together as an engaged couple, that they hit the Super 7 Lottery for $8,255,641, payable in 26 equal installments of $317,524.67. It happened on April 26, 1989, and as I'm sure those of you who play the Lottery know, it happened

at 7 p.m. Almost all of the important events in this whole case happened within an hour of that time. That's the time that is really the crucial part of this case.

"Subsequent to that time, there has been two payments to the defendant, Sylvia Trapuzzano, of $635,049.34, and there is an on-going obligation of the Commonwealth to continue those payments.

"In order for you to understand what happened within the few minutes of the hour, which I call the critical hour, we will offer testimony dealing with the relationship between Gary Fender and Sylvia Trapuzzano.... [W]e have two very simple theories about why we are here. The first one is a simple contract. Gary contends that he gave up his right to sign the ticket, in his hand, as a claimant, in return for a promise from Sylvia to him, in his living room, or her living room, or their living room, to share the proceeds equally. It's our theory that if that promise was made, and she really meant it, then it's a contract, and if she doesn't live up to it, then it's a breach of contract and she owes him.

"Our second theory is called fraudulent misrepresentation. If she made the same promise at the same time, and even then knew she wasn't going to share, that's called fraudulent inducement. 'Give back the ticket, don't sign it,' and the damages are the same, but we have two separate theories. Whether she intended to carry out the promise and then decided later not to, or if it was fraudulent inducement, it comes out the same way either way. If you find she made the promise and she breached it, there are two theories that say he is entitled to one-half of the proceeds.

"The Pennsylvania Lottery is included in this case because it's a really unusual situation. When you file a claim to sign the back of the ticket, and you'll hear all about that, you come to claim it and then they owe money to the claimant, the person who signs the ticket. The ticket is very important; the most important single thing. They are here because while we are seeking to share in the money she's already received, we are seeking what is called a declaratory judgment that for the next 24 years, when they pay the money, they must share it according to our version of the facts."

In the course of his opening statement then counsel for the defendant Trapuzzano said this:

"This is not about $8 million, or a red Porsche; this is about whether or not there was an agreement between Sylvia Trapuzzano and Gary Fender, and you don't get to the $8 million question at all, unless you first find that such an agreement existed. I would ask you, respectfully, not to focus on what is a substantial amount of money, but to focus on what the real substantive issue in this case is."

In his closing argument, counsel for defendant Trapuzzano, said this:

"The issue is, did Gary Fender and Sylvia Trapuzzano enter into an agreement, a contract, on April 26, 1989, at the time the ticket was signed. That's the issue that you have to deal with. All of the other information that you've heard goes to the credibility of the parties, to be sure, but is not the issue in the case. What you need to address is, was there a contract; was there an agreement; was there a meeting of the minds."

In his closing argument, counsel for plaintiff Fender, said this:

"What is Gary's theory of recovery? Gary Fender contends that he and Sylvia were living together, sharing expenses; they were engaged to be married, and he contends that with his knowledge, Sylvia picked up their lottery tickets on her way home from work. He contends that after they found out they hit the numbers, Sylvia signed the ticket, and as he prepared to sign the ticket, she told him he should let her sign the ticket alone; that his ex-wives would take him over the coals, and if he returned the ticket to her, unsigned, she promised to share the money equally with him. She said some other things. She said they were getting married anyway, and Gary should trust her, and so on and so forth.

"Gary contends that's what she said and it's Gary's contention that he did what she asked; that he gave her back the ticket and didn't sign it and allowed her to claim the prize.

"We seek to enforce that promise here and to recover $476,287, which is half of what she got so far, and recover one-half of each of the next 23 installments. She gets $317,524 right now from the state.

Our theory is one of a simple, oral contract. It's uncomplicated. We can't reach into her mind and show you whether she really intended to breach it at the moment she promised him, or whether she decided later not to live up to her promise. That really doesn't make any difference. The fact is, she breached a promise, and Gary relied on that promise and gave her back the ticket."

In the course of his charge, the trial judge said this:

"I have told you the issue for you to decide in this case is whether there was a contract between the plaintiff and defendant to share equally the proceeds of this winning lottery ticket. If there was such an agreement, the amount of damages to which the plaintiff is presently entitled, as well as the percentage of future proceeds to be paid by the Commonwealth of Pennsylvania, must be determined by you."

The plaintiff's complaint did include one count against the Pennsylvania State Lottery which recited that, as a result of Trapuzzano's presentation of the winning lottery ticket, an agent or employee of that agency, issued a draft for the first installment of the winning proceeds in the amount of $254,019.74, net of taxes, on or about May 9, 1989, and that Fender was entitled to his proportionate share of the winning lottery ticket proceeds. The plaintiff Fender requested that the court enter a declaratory judgment directing that the Pennsylvania State Lottery distribute to plaintiff his pro rata share of the winning lottery ticket proceeds.

The Pennsylvania State Lottery filed an answer admitting that Sylvia Trapuzzano was one of 14 winners, and that the first of 26 annual installments had been received by her on or about May 9, 1989. The Lottery Commission denied it was legally obligated to pay the plaintiff any installments because the plaintiff was not a holder of the winning ticket; did not sign the ticket presented to the defendant Lottery Commission; and had failed to make claim for the prize within one year of the drawing in which the prize was won.

The Pennsylvania State Lottery did file a motion for summary judgment on the grounds that the plaintiff had

not commenced his action within one year of the drawing on April 26, 1989, asserting that the action had commenced on June 6, 1990. However, the prothonotary's docket clearly shows, and it does not now appear to be disputed, the action was commenced on April 2, 1990, when plaintiff filed a praecipe to issue a writ of summons, which was duly served on the Pennsylvania State Lottery.

At the outset of the trial, plaintiff waived any claim against Pennsylvania State Lottery for installments on the tickets already paid and stated they were seeking a declaratory judgment about future payments, pursuant to whatever order the court issued. Counsel for the Lottery Commission agreed that ruling on its motion for summary judgment be deferred and also indicated that the Lottery Commission did not plan to participate in the trial.

The court told the jury that the Pennsylvania State Lottery would not actively participate in the trial but would remain as a party to the proceeding.

In the course of its charge, the trial court briefly referred to the Pennsylvania State Lottery Commission as follows:

"The Commonwealth of Pennsylvania, the Pennsylvania Lottery Commission, is also a party to this action, although it has not participated actively in this trial.

"Regulations promulgated by the secretary of revenue for the operation of the State Lottery provide, in part, 'The Commonwealth and its agents, officers and employees, the department and its secretary and director, the bureau and its agents, officers and employees shall be discharged of liability upon payment of a prize to the holder of a winning lottery ticket.'

"Section 831.9 of the regulations governing the Super 7 Lottery says this 'A Super 7 Lottery is deemed to be owned by the person named on the ticket, or in the case of a ticket not completed with name and address, by the person holding the ticket.'

"These regulations govern the liability of the Commonwealth of Pennsylvania and its agents, including the Pennsylvania State Lottery Commission, for the payment of prize money. The Commonwealth and the Pennsylvania State Lottery accordingly, are discharged of any liability to the plaintiff, Gary P. Fender, for payments heretofore made by the Commonwealth to Sylvia Trapuzzano, since these payments were made by the Commonwealth to Sylvia Trapuzzano, the person holding and signing the winning ticket.

"However, the State Lottery Law also provides that 'No right of any person to a prize drawing shall be assignable except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled.' Under this provision of the State Lottery Law, an appropriate judicial order would be made by this court if you find that the plaintiff, Gary P. Fender, is entitled to be paid his share of any future payments to which the winner, Sylvia Trapuzzano, is now entitled. Of course, if you find that Gary Fender is not entitled to any share of any future lottery payments, no such judicial order governing the conduct of the Lottery Commission would be made by this court."

This court has not yet made any appropriate judicial order, in accordance with the jury's verdict, pending disposition of the defendant's motion for post trial relief.

On May 11, 1992, the parties, Gary P. Fender and Sylvia A. Trapuzzano, by their counsel, having given their consent to the entry of the order, the court ordered that the defendant, Sylvia A. Trapuzzano, deposit a sum of $109,546.01 representing 50 percent of the 1992 lottery award payment, less 31 percent, being the approximate federal income tax due, into an escrow account to be maintained under her name at Pittsburgh National Bank; the defendant Trapuzzano to continue to make annual deposits as needed in the same manner pending further order of court; that the purpose of the escrow account was to provide security in the event plaintiff succeeds in obtaining a judgment and ultimately prevails on appeal. The order also provided that this court would retain jurisdiction for the purpose of implementing or enforcing the order, including the directing of the release or payment of funds, and such further relief as appropriate. At the time this consent order was made, the defendant Trapuzzano was represented by Robert L. Byer, Esquire, formerly of the Commonwealth Court.

The motion of the defendants to dismiss for lack of subject matter jurisdiction is based upon the decision of the Commonwealth Court in the case of *In re Lotto Jackpot Prize of December 3, 1982 won by Nicholas H. Marianov,* 144 Pa. Commw. 658, 602 A.2d 402 (1992). In *Marianov,* Nicholas Marianov won over $3 million in the Pennsylvania Lotto Jackpot of December 3, 1982, payable in 21 annual installments.

In August of 1990, Marianov entered into an agreement with two buyers, which provided that Marianov "sells, assigns and transfers to buyers equally and buyers purchase from seller, all of the seller's remaining right, title and

interest in the lottery prize for the price of $930,000." The agreement was contingent on Marianov obtaining an order from the Court of Common Pleas of Allegheny County approving the transaction. The agreement further provided that $25,000 of the purchase price would be paid upon execution of the agreement, and the balance be paid within 38 days after final court approval of the transaction and verification that the insurance carrier, which issued the annuity contract for payment of the prize, change the beneficiary under the contract from Marianov to the buyers.

Marianov then filed a petition in the Court of Common Pleas of Allegheny County, attaching a copy of the agreement asking the court to approve the transaction. The Commonwealth was served with a copy of the petition and moved to quash the petition on the ground that the voluntary assignment of Marianov's right to his prize violated section 8 of the State Lottery Law prohibiting such voluntary assignment. There being no disputed issues of fact, the Court of Common Pleas did not conduct an evidentiary hearing, but considered the case solely on the basis of Marianov's petition and the Department of Revenue's motion to quash.

The Court of Common Pleas granted the petition on the grounds section 8 of the State Lottery Law gave the court discretion to approve such a voluntary assignment if the assignment was reasonable and in the best interest of the parties involved, including both the Commonwealth and the prize winner. On appeal, a panel of the Commonwealth Court speaking through Judge Byer, found that the Court of Common Pleas of Allegheny County lacked subject matter jurisdiction because Marianov's pe-

tition was, in effect, a mandamus action against a Commonwealth agency, and in such actions, original jurisdiction is vested in the Commonwealth Court, since no statute expressly provided that the Court of Common Pleas or any other tribunal had original jurisdiction over an action of such nature against the Commonwealth government.

The Commonwealth Court also held that section 8 of the State Lottery Law, expressly prohibited the winner of a prize from selling or otherwise assigning the right to such prize.

Section 8 of the State Lottery Law, says this:

"[N]o right of any person to a prize shall be assignable, except that payment of any prize drawn may be paid to the estate of a deceased prize winner, and except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled. The secretary shall be discharged of all further liability upon payment of a prize pursuant to this section." 72 P.S. §3761-8.

In his opinion, Judge Byer said this:

"The State Lottery Law nowhere provides that a winner of a prize may sell or otherwise assign the right to a prize. Instead, section 8 expressly prohibits such transactions. We could not properly construe the phrase 'appropriate judicial order' as creating an exception which effectively would swallow this general prohibition. That would be contrary to the General Assembly's direction in 1 Pa.C.S. §1922(2) that in construing a statute, we must presume '[t]hat the General Assembly intends the entire statute to be effective and certain.' Instead, we

hold that in context, the language 'appropriate judicial order' refers to an order in some other proceeding in which a court may make a disposition of the lottery prize as a remedy.

"For example, the right to receive lottery payments is subject to garnishment or attachment execution. *Smith Inc. v. Belle,* 35 D.&C.3d 563 (1985). Therefore, an order entering judgment against the garnishee and directing payment to the judgment creditor would be an 'appropriate judicial order' for purposes of section 8 of the State Lottery Law. *Id.*

"Similarly, the right to a lottery prize may be included in marital property for purposes of equitable distribution. See *Nuhfer v. Nuhfer,* 410 Pa. Super. 380, 599 A.2d 1348 (1991). Therefore, an order directing payment of lottery winnings to a spouse as part of equitable distribution would be an 'appropriate judicial order' for purposes of section 8.

"There are other examples of what might be an 'appropriate judicial order' in this context. These would include orders in bankruptcy proceedings which direct payment of lottery prizes to a trustee in bankruptcy or to creditors. The phrase also would encompass certain orders entered in support proceedings brought by a spouse or child of a prize winner. 'Appropriate judicial order' also would include an order in an action by a plaintiff who claims that a person fraudulently claimed a lottery prize in his or her own name by failing to include the plaintiff's name on the back of the ticket when claiming a prize. See 61 Pa. Code §811.15.... (Footnote 5. In these cases, original jurisdiction properly would be in

a Court of Common Pleas (e.g., divorce or garnishment proceeding) or in the federal courts (e.g., bankruptcy) because the Commonwealth's involvement in such cases would be merely as a stakeholder with respect to administration of a remedy in an action between other parties in which the Commonwealth has no direct interest. See *Millick v. Millick*, 140 Pa. Commw. 252, 592 A.2d 788 (1991).)"

Judge Byer, in his opinion, clearly holds that payment of a lottery prize may be made to a person other than the winner "pursuant to an appropriate judicial order." The opinion also holds that, the exception, pursuant to an appropriate judicial order, "refers to an order in some other proceeding in which a court may make a disposition of the lottery prize as a remedy."

Among the other proceedings in which such judicial order is appropriate, the Commonwealth Court cites with approval, the case of *Smith Inc. v. Belle*, 35 D.&C.3d 563 (1985), where Judge Bayley of the Court of Common Pleas of Cumberland County held that, where the plaintiffs had obtained final judgment against the defendant, who had won a major state lottery prize, the Pennsylvania Department of Revenue, Bureau of State Lotteries could be made a garnishee, and judgment entered against such garnishee, directing payment by the garnishee of the judgment to the judgment creditor, as an appropriate judicial order for purposes of section 8 of the State Lottery Law.

The defendant, in *Smith v. Belle*, argued that the Commonwealth was immune from such garnishment proceedings, but Judge Bayley found that the lottery statute specifically provided for a limited waiver of immunity, in

that the Commonwealth was subject to appropriate judicial orders, regarding undistributed funds due to prize winners. Judge Bayley further said this:

"The law is both reasonable and understandable. The amount of litigation or disruption to the Commonwealth involving judicial orders that attach and seek information on lottery winnings held by the government is limited. Furthermore, we conclude that the legislature recognized, that in the unique situation involving lottery winners, it would be contrary to public policy to allow undistributed funds to be unavailable for attachment by creditors merely because a state agency was conducting what is essentially a commercial activity." *Smith Inc.* at 566.

Judge Byer further stated in *Marinov, supra.* at 405:

"'Appropriate judicial order' also would include an order in an action by a plaintiff who claims that a person fraudulently claimed a lottery prize in his or her own name by failing to include the plaintiff's name on the back of the ticket when claiming a prize."

In the case at bar, the plaintiff Fender claimed that, Trapuzzano had not only breached an express contract to pay him one-half of the proceeds of the winning ticket, but that Trapuzzano was guilty of fraud because she never intended to keep such promise.

This is precisely the type of "other proceeding" in which Judge Byer said original jurisdiction was properly in the Court of Common Pleas.

At oral argument, counsel for the defendant Trapuzzano agreed, that for jurisdictional purposes, it made no difference whether the plaintiff recovered on a theory of

fraudulent misrepresentation or breach of an express contract.

In the case of *Millick v. Millick,* 140 Pa. Commw. 252, 592 A.2d 788 (1991), Judge Gilmore of this court had found the Public Employees' Retirement System in contempt for failure to disclose information and for paying retirement funds in its possession to a teacher, who was in arrears on his support order and owed his wife a portion of his pension benefits as part of the equitable distribution in the divorce proceeding between the parties.

The Retirement System argued that it did not have to comply with the court's order because such pension funds were exempt from garnishment and attachment by virtue of statute.

The Commonwealth Court held that public pensions could be attached in divorce or support actions.

The Retirement System then argued that the trial court was without jurisdiction, because original and exclusive jurisdiction was in the Commonwealth Court. In *Millick,* the court said this:

"While original jurisdiction over official acts of the Commonwealth or its officers usually rests with this court, 42 Pa.C.S. §761 does not envision that this court would have jurisdiction over matters the Commonwealth or its agencies are only incidentally involved with no interest in the outcome of the underlying action. Original jurisdiction by this court normally only exists where the Commonwealth or one of its agencies is a party to the action and its rights are directly affected. Of course, even if the Commonwealth or one of its agencies rights are only incidentally affected, it would be within this

court's appellate jurisdiction to review the trial court's actions.

"Moreover, the Divorce Code and the domestic relations support orders that accompany divorce matters governs that area so completely that it, in effect, carves out an exception to that general rule." *Millick at 140 Pa. Commw. at 255, 592 A.2d at 791.*

Thus, in *Millick,* the Commonwealth Court held that, even though the Divorce Code does not expressly spell out exceptions to the general rule that all actions brought against the Commonwealth or one of its agencies, are within the exclusive original jurisdiction of the Commonwealth Court, the Divorce Code governs that area so completely that "in effect, carves out an exception to that general rule."

In the case at bar, the State Lottery Law specifically provides that the payment of lottery prizes may be made to a person other than the winner pursuant to an appropriate judicial order.

In the case at bar, it is clear that the issue to be decided by the jury was whether there was an agreement between Fender and Trapuzzano to share equally in the proceeds of the lottery. The Commonwealth had no interest in the outcome of that controversy between Fender and Trapuzzano, and effectively demonstrated that lack of interest by voluntarily failing to participate in the actual trial. The plaintiff makes no claim against the Pennsylvania State Lottery; on installments already paid to Trapuzzano the declaratory judgment sought by Fender relates only to the payment of future lottery installments, that is, the plaintiff seeks "an appropriate judicial order"

in order that future lottery payments be made to the plaintiff as a remedy.

If the jury's verdict is upheld, the Pennsylvania State Lottery will incur no additional liability for past or future payments.

Nevertheless, the defendants argue that somehow, the Pennsylvania State Lottery is an indispensable party in this proceeding, and that its rights are directly affected. The defendant Trapuzzano incorrectly argues that the plaintiff "seeks judicial recognition of an alleged contractual assignment of a portion of a lottery prize." (Defendant's brief, p. 10). *Marianov* clearly involved a transfer by Marianov of his rights to receive future installment payments by accepting a single lump sum amount now. In the case at bar, no such transfer of ownership rights is involved.

Fender has maintained that, from the outset, he was an equal owner of the lottery proceeds, and that he entered into an express contract with Trapuzzano, which recognized such joint ownership. While Trapuzzano denied any such agreement, the jury found otherwise. *Marianov* expressly recognized original jurisdiction in such a case in this court.

Furthermore, in *Marianov,* the Lottery Commission, at the outset, raised the issue, that section 8 of the State Lottery Law prohibited any voluntary assignment.

Neither defendant in this case has properly raised such issue, and accordingly, it has been waived. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

Trapuzzano also contends original jurisdiction in the Commonwealth Court is required to insure "that state wide governmental policies are interpreted and applied uniformly." (Defendant's brief, p. 7). No statewide governmental policies are implicated in this case; the only issue is a matter of simple contract law: whether there was an agreement between the parties to share equally the proceeds of the lottery prize.

There are no disputed facts concerning the relationship of the State Lottery Commission to either the plaintiff Fender, or the defendant Trapuzzano. It is undisputed that defendant Trapuzzano presented a winning lottery ticket to officials of the Lottery Commission; and that the Lottery Commission has no liability to Fender or Trapuzzano on installments already paid. Nor, is there any dispute that the Lottery Commission will have no liability to either Fender or Trapuzzano if it pays future installments in accordance with an appropriate judicial order.

The defendants also claim that any directive to the Pennsylvania Lottery to pay half of the Trapuzzano winnings to Fender is "an attempt to impose an affirmative obligation on the Commonwealth and threatens to thrust expensive, annoying and disruptive administrative burdens on Pennsylvania State Lottery." (Defendants' brief, p. 8).

The Pennsylvania State Lottery, with the help of an extensive computer system, pays off thousands of winners every day.

As Judge Bayley stated in the case of *Smith Inc. v. Belle, supra,* "the amount of litigation or disruption to the Commonwealth involving judicial orders that attach and seek information on lottery winnings held by the government is limited." *Smith Inc.* at 566.

It is admitted that undistributed lottery proceeds are subject to attachment by judgment creditors.

The service of the writ of execution upon the Commonwealth, as garnishee, subjects it to the mandate and injunctive orders of the writ, restraining it from paying any debt to, or for the account of the defendant, and from delivering any property of the defendant. Pa.R.C.P. 3111(c).

Violation of the mandate and injunctive orders of the writ may be punished as contempt. Pa.R.C.P. 3111(d).

An order directing the Lottery Commission to pay one-half the proceeds of the lottery prize to the plaintiff is certainly not any more burdensome than the procedure involved in garnishment proceedings.

It is clear to this court, that the Lottery Commission has no interest in the outcome of the underlying action between Fender and Trapuzzano and that its rights are not directly affected.

## ORDER OF COURT

And now, August 4, 1992, the motion of the defendants, Sylvia A. Trapuzzano and Pennsylvania State Lottery, to dismiss this action for lack of subject matter jurisdiction is denied.