## Livingston v. Unis

*Timothy A. Hoy,* for plaintiff.
*Mark R. Alberts,* for defendant Kathy McLaren Unis.
*Louis P. Vitti,* for defendant Frank P. Unis.
*Vicky Ann Trimmer,* assistant counsel, Department of Revenue, for defendant Pennsylvania State Lottery.

LEWIS, *J.,* August 31, 1994—Before the court is a petition filed pursuant to Pennsylvania Rule of Civil Procedure 3118 by Thomas A. Livingston. Livingston

seeks to obtain the assistance of this court in enforcing a 1991 writ of attachment issued in Dauphin County. For reasons set forth below, this court grants Livingston's request for relief.

The undisputed facts of this case are that defendant Frank P. Unis was indebted to Livingston in the amount of $50,000. On July 29, 1991, as a consequence of this debt, judgment was entered in Allegheny County in favor of Livingston against Mr. Unis for the amount of the debt plus costs. On September 5, 1991, the Allegheny County judgment was entered by transfer in Dauphin County pursuant to Pa.R.C.P. 3002. Livingston also requested that the Prothonotary of Dauphin County issue a writ of attachment to the Dauphin County Sheriff naming the Pennsylvania State Lottery as garnishee. The lottery was served with the writ of attachment on September 11, 1991. Interrogatories in attachment were also attached and served on the lottery.

The lottery's answers to the interrogatories indicated that it owed Mr. Unis a sum of money from lottery winnings and that it owned an annuity contract of which Mr. Unis was a beneficiary. Under the annuity contract, Mr. Unis was to receive annual payments of $6,134.98 less federal tax withholding. As of the time the answers were served on Livingston, five net payments of $4,907.99 had been made to Mr. Unis under the annuity contract, with 16 payments remaining. After receiving the lottery's answers to the interrogatories, Livingston entered judgment against the lottery on November 12, 1991 in the principal amount of $55,072.75.

On March 3, 1992, Kathy McLaren Unis filed a property claim with this court alleging that the lottery winnings which had been garnished by Livingston were marital property and, thus, immune from attachment. The property claim stems from a complaint in divorce

filed by Mrs. Unis in Allegheny County on January 27, 1992. Upon receiving notice of the property claim, the lottery notified all parties that it was withholding all future installment payments pending resolution of this matter.

On December 29, 1993, in a decree of distribution, the Allegheny Court of Common Pleas awarded to Mrs. Unis all of Mr. Unis' right, title, interest, and entitlement to the lottery proceeds and directed the lottery to pay to Mrs. Unis the proceeds to which Mrs. Unis is entitled pursuant to State Lottery Law.

Upon receiving the decree of distribution, the lottery remitted to Mrs. Unis the 1992 and 1993 installments, which had earlier been withheld. The lottery notified Livingston that it would not honor the September 1991 writ of attachment in light of the decree of distribution.

On March 9, 1994, Livingston filed a petition for supplementary relief in aid of execution with this court pursuant to Pa.R.C.P. 3118 asking the court to enjoin any further distribution of the lottery proceeds to Mrs. Unis. The petition also asks the court to find that the decree of distribution in the divorce action did not affect the validity of Livingston's writ of attachment and to order the lottery to honor the attachment by distributing future annuity payments to Livingston until such time as Livingston's judgment against Mr. Unis is satisfied.

Briefs on the relevant legal issues have been filed by Livingston, Mrs. Unis, and the lottery. Mr. Unis has not filed a brief. Because this court finds that no issues of material fact exists, this court is sua sponte ruling on the petition as a matter of law. See *Gulf Mortgage and Realty Investments v. Alten,* 282 Pa. Super. 230, 237, 422 A.2d 1090, 1094 (1980) (where the court held that it was appropriate to decide a Pa.R.C.P. 3118 petition without a hearing as required under the rule

where there are no issues of fact to be resolved); see generally, Goodrich-Amram 2d §3118(a)(4).

There are two threshold issues which must be addressed before proceeding to the merits of the petition. Namely, whether this court has jurisdiction to resolve the merits of this case and whether this entire matter may be properly resolved via a Pa.R.C.P. 3118 petition.

Under 42 Pa.C.S. §761, the Commonwealth Court has original jurisdiction of all civil actions or proceedings against the Commonwealth government. However, only where the substance of the action is against the Commonwealth does the Commonwealth Court retain exclusive original jurisdiction. *Lotto Jackpot Prize of December 3, 1982 Won by Marianov,* 533 Pa. 402, 625 A.2d 637 (1993). Where the Commonwealth or one of its agencies are only incidentally involved with no interest in the outcome, the Commonwealth Court does not have exclusive jurisdiction. *Millick v. Millick,* 140 Pa. Commw. 252, 258, 592 A.2d 788, 791 (1991).

In this case, the lottery does not have an interest in the outcome of the case. The lottery merely holds the proceeds to which the litigants seek, and upon resolution of the matter, will disburse the proceeds to the entitled party. Therefore, because the lottery is a mere disinterested party, jurisdiction is proper in this court.[1]

The next issue is whether Livingston is entitled to the relief requested via his petition filed pursuant to Pa.R.C.P. 3118. It is argued by Mrs. Unis that Rule

1. The lottery, the only party that raises jurisdiction as an issue, contests jurisdiction only if this court would find that lottery proceeds are not garnishable. The lottery argues that because such a holding could affect potential litigation in the other 66 counties, the issue should be addressed by the Commonwealth Court. As discussed *infra,* lottery proceeds are garnishable, thus lottery's jurisdiction concerns are laid to rest.

3118 cannot be employed to adjudicate title to property, but rather, it may only be used for the limited purpose of maintaining the status quo of the judgment debtor's property. See *Greater Valley Terminal Corp. v. Goodman,* 415 Pa. 1, 202 A.2d 89 (1964). Because any action by this court would involve a determination of title, it is argued that this court cannot grant the requested relief via a Rule 3118 petition.[2]

Rule 3118 authorizes summary proceedings in aid of execution for the purpose of maintaining the status quo of the judgment debtor's property and may be used only for that purpose. *Id.* at 8, 202 A.2d at 94.[3] The

---

2. Mrs. Unis offers no reason why she may be prejudiced by using Rule 3118 to resolve this matter.

3. Pa.R.C.P. 3118 provides:

"Rule 3118. Supplementary Relief in Aid of Execution

"(a) On petition of the plaintiff, after notice and hearing, the court in which a judgment has been entered may, before or after the issuance of a writ of execution, enter an order against any party or person

"(1) enjoining the negotiation, transfer, assignment or other disposition of any security, document of title, pawn ticket, instrument, mortgage, or document representing any property interest of the defendant subject to execution;

"(2) enjoining the transfer, removal, conveyance, assignment or other disposition of property of the defendant subject to execution;

"(3) directing the defendant or any other party or person to take such action as the court may direct to preserve collateral security for property of the defendant levied upon or attached, or any security interest levied upon or attached;

"(4) directing the disclosure to the sheriff of the whereabouts of property of the defendant;

"(5) directing that property of the defendant which has been removed from the county or concealed for the purpose of avoiding execution shall be delivered to the sheriff or made available for execution; and

"(6) granting such other relief as may be deemed necessary and appropriate.

right of relief under Rule 3118 may be given "without the necessity of full dress equity proceedings." *Id.* at 6, 202 A.2d at 93. Rather, when required, something less than a full hearing prior to the granting of relief is envisioned. *Id.;* See also, *Kaplan v. I. Kaplan Inc.,* 422 Pa. Super. 215, 619 A.2d 322 (1993). The predicates to relief under Rule 3118 are the "existence of an underlying judgment and property of the debtor subject to execution." *Kaplan, supra* at 221, 619 A.2d at 326.

This court agrees with Livingston that the petition is a proper vehicle to effectuate resolution of this matter. The petition seeks to have the lottery and Mrs. Unis recognize the validity of the garnishment and to enjoin any further transfers of the garnished proceeds to Mrs. Unis in violation of the garnishment. The petition only attempts to preserve the status quo from September to November 1991 when the proceeds were attached and the lottery intended to distribute the proceeds to Livingston. This status quo was first disturbed by Mrs. Unis' property claim and later by the lottery's receipt of the decree of distribution.

Admittedly, there is a quasi-property title determination to be made in this case. To wit, the court must determine to what extent the proceeds were included in the decree of distribution. Nonetheless, a simple reading of the decree of distribution certainly does not require a full blown hearing outside the gamut of Rule 3118. This court is

---

"(b) The petition and notice of the hearing shall be served only within the Commonwealth in the manner prescribed by Rule 440 for the service of legal papers other than original process.

"(c) Violation of the mandate or injunction of the court may be punished as a contempt."

confident that its inquiry is well within the scope of the rule.[4]

Turning to the merits of the case, Mrs. Unis first argues that lottery proceeds are not garnishable. In sum, she argues that a writ of attachment is not an "appropriate judicial order" as used under the State Lottery Law, and that the doctrines of sovereign immunity and custodia legis render the lottery immune from attachment proceedings.

Section 3761-8 of the State Lottery Law provides:

"No right of any person to a prize drawn shall be assignable, except that payment of any prize drawn may be paid to the estate of a deceased prize winner, and, except that any person pursuant to *an appropriate judicial order* may be paid the prize to which the winner is entitled. The secretary shall be discharged of all further liability upon payment of a prize pursuant to this section." 72 Pa.C.S. §3761-8. (emphasis added)

It was specifically held in *Smith Inc. v. Belle,* 35 D.&C.3d 563 (Cumb. Co. 1985) that the right to receive lottery payments is subject to garnishment or attachment execution. Judge Bayley articulated:

"We have [sic][5] difficulty in arriving at the conclusion that the legislature, while not authorizing a winner of the lottery to assign his proceeds, nevertheless specifically made those proceeds subject to attachment. Section 8 of the act specifically authorizes payment

---

4. It's also worth keeping in mind Pa.R.C.P. 126 which provides that the rules should be construed liberally "to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable."

5. It is obvious that the word "no" was erroneously omitted in light of the court's holding. It should read "We have *no* difficulty in arriving...."

of prizes only to winners except in cases of judicial orders. It naturally follows that the prizes are subject to being paid to persons or entities other than prize winners upon the authority of those judicial orders....

"The law is both reasonable and understandable. The amount of litigation or disruption to the Commonwealth involving judicial orders that attach and seek information on lottery winnings held by the government is limited. Furthermore, we conclude that the legislature recognized, that in the unique situation involving lottery winners, it would be contrary to public policy to allow undistributed funds to be unavailable for attachment by creditors merely because a state agency was conducting what is essentially a commercial activity." *Id.* at 565-66.

Although our appellate courts have not specifically addressed this issue, the *Smith Inc.* case was cited with approval by the Commonwealth Court:

"For example, the right to receive lottery payments is subject to garnishment or attachment execution. *Smith Inc. v. Belle,* 35 D.&C.3d 563 (1985). Therefore, an order entering judgment against the garnishee and directing payment to the judgment creditor would be an 'appropriate judicial order' for purposes of section 8 of the State Lottery Law." *In re Lotto Jackpot Prize of December 3, 1982 Won by Marianov,* 144 Pa. Commw. 658, 665, 602 A.2d 402, 405 (1992), *Marianov I, aff'd,* 533 Pa. 402, 625 A.2d 637 (1993), *Marianov II;* See also, *Fender v. Trapuzzano,* 16 D.&C.4th 579 (Wash. Co. 1992).

In *Marianov I,* a lotto prize winner entered into an agreement with two buyers to assign his winnings to the buyers. The agreement was contingent upon judicial approval of the assignment. The Department of Revenue

moved to quash the petition asserting that section 8 of the State Lottery Law prohibited such an assignment.

The court held that section 8 proscribes voluntary assignments of prize winnings, and that an order approving such a sale would not be an appropriate judicial order. *Marianov I, supra* at 665, 602 A.2d at 405. Instead, the court explained, "the language 'appropriate judicial order' refers to an order in some other proceeding in which a court may make a disposition of the lottery prize as a remedy." *Id.* To illustrate, the court specifically explained that "an order entering judgment against the garnishee and directing payment to the judgment creditor would be an 'appropriate judicial order' for purposes of section 8." *Id.*

The Commonwealth Court's holding in *Marianov I* was affirmed by the Supreme Court in *Marianov II, supra.* The court expressed its agreement with the Commonwealth Court that an appropriate judicial order "refers to an order in a separate proceeding where disposition of a lottery prize is an appropriate remedy." *Id.* at 407, 625 A.2d at 640.[6]

The court did not repeat the Commonwealth Court's garnishment example, but rather, added its own example: "an order directing payment of lottery winnings to a spouse as part of equitable distribution ... may be an 'appropriate judicial order.' " *Id.*

The *Marianov II* court certainly did not criticize or disapprove the Commonwealth Court's garnishment example. Rather, it implicitly agreed while adding its own example of an appropriate judicial order. What can be taken out of the court's decision is that an appropriate

---

6. The court did express disagreement with the Commonwealth Court's conclusion that it had exclusive original jurisdiction in the matter. *Marianov II, supra at 405-06, 625 A.2d at 639.*

judicial order is an order in a separate proceeding where disposition of a lottery prize is an appropriate remedy—precisely what has occurred in this case.

Therefore, it is clear to this court that a garnishment judgment is an appropriate judicial order under section 8 of the State Lottery Law.

Mrs. Unis also argues that the doctrines of sovereign immunity and custodia legis render the lottery immune from attachment proceedings. Both prongs of this argument are without merit.

Initially, this court takes particular notice to the lottery's concession in its brief that it is not immune from garnishment proceedings. See brief of lottery at 17-19. Great deference is accorded to an agency's interpretation of the laws under which it operates. *Nationwide Mutual Insurance Co. v. Foster,* 143 Pa. Commw. 433, 439, 599 A.2d 267, 270 (1991).[7]

Further, the Commonwealth has waived its immunity in the State Lottery Law itself. The immunity afforded to the Commonwealth is provided by 1 Pa.C.S. §2310:

"Pursuant to Section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit *except as the General Assembly shall specifically waive the immunity.*" (emphasis added)

---

7. Because the Commonwealth has not asserted immunity, the defense is really a non-issue in this case. Mrs. Unis certainly cannot raise the defense for the Commonwealth. Nonetheless, the court will explore the merits of the issue in order to accomplish a precise resolution of this matter.

This court agrees with *Smith Inc.* that the State Lottery Law contains a limited waiver of immunity by allowing distribution of lottery proceeds to a person pursuant to an appropriate judicial order.

"In effect, the lottery statute provides for a limited waiver of immunity. While not allowing the Department of Revenue or the Lottery Bureau to be sued in the traditional sense, the statute clearly provides that they are subject to judicial orders regarding the undistributed funds due to prize winners." *Smith Inc., supra* at 566.

The doctrine of custodia legis is likewise not applicable to this case. This doctrine provides that funds in the possession of the Commonwealth or one of its political subdivisions, linked to individuals, are not subject to attachment. See *Ramins v. Chemical Decontamination Corp.,* 126 Pa. Commw. 559, 560 A.2d 836 (1989). However, an exception to the rule is when the garnishee routinely enters into commercial ventures. *Central Contracting Company v. C.E. Youngdahl & Company Inc.,* 418 Pa. 122, 128, 209 A.2d 810, 813-14 (1965).

As the lottery itself argues, the activity of the lottery is more similar to that of a private company than a government for purposes of analyzing the validity of the garnishment. The lottery explains that it acts as a company by advertising a product and making it available for sale. Indeed, the lottery engages in commercial advertising, see 72 Pa.C.S. §3761-7, enters contracts with private business to sell lottery tickets, see 72 Pa.C.S. §3761-6, and establishes special promotional prize drawings, see 61 Pa. Code 3811.41. Only where it uses profits from the lottery for public projects, *i.e.,* senior citizen programs, does the lottery act as a government.

In this light, it is clear that the doctrine of custodia legis is inapplicable and the lottery is not immune from

attachment. This court, therefore, holds that lottery proceeds are garnishable and that the garnishment of Mr. Unis' proceeds by Livingston was proper.

Finally, the crux of the case is upon us. To wit, whether the proceeds were included in the decree of distribution, and, if so, to what extent.

The decree of distribution, issued by the Allegheny Court provides, in part:

"4. LOTTERY PROCEEDS.... In recognition of wife's claims for equitable distribution, alimony pendente lite, and alimony, all of husband's right, title, interest and entitlement to the aforementioned lottery proceeds is hereby awarded to wife and the Pennsylvania State Lottery Commission/Department of Revenue is hereby directed to pay to Kathy McLaren Unis the prize to which Frank P. Unis is entitled pursuant to the State Lottery Law, 72 P.S. §3761-1 et seq., and, specifically section 3761-8 of the State Lottery Law.

"The parties further acknowledge and agree that the assignment of husband's lottery winnings to wife as set forth herein is an 'appropriate judicial order' pursuant to section 3761-8 of the State Lottery Law. *The parties further acknowledge that Thomas A. Livingston has garnished the aforementioned lottery winnings by causing a writ of execution to be issued against the Pennsylvania State Lottery, garnishee, in the Court of Common Pleas of Dauphin County, Pennsylvania at no.: 2337 N 1991.*" (emphasis added)

This court holds that the unambiguous language contained in the four corners of the decree exhibits that Livingston's garnishment was not affected therein. It is clear that Mrs. Unis received only Mr. Unis' right, title, interest and entitlement to the lottery proceeds. The Allegheny Court specifically included an acknowledgment by both parties within the decree that Mr.

Unis' rights to the proceeds were encumbered by Livingston's garnishment. It follows that Mrs. Unis was to receive the lottery proceeds of Mr. Unis upon satisfaction of the debt to Livingston. In other words, Livingston would be paid by the lottery first, and upon satisfaction of the debt, Mrs. Unis was to receive the remaining proceeds.[8]

Therefore, this court holds that the garnishment of Mr. Unis' proceeds was proper and the decree of distribution did not affect Livingston's rights under the garnishment. This court orders the Pennsylvania State Lottery to honor the September 1991 writ of attachment and pay the monies due under it. Upon satisfaction of the judgment, the lottery shall pay to Mrs. Unis the remaining sums as directed by the decree.

## ORDER

And now, August 31, 1994, petitioner's petition for supplementary relief in aid of execution is hereby granted. This court orders the Pennsylvania State Lottery, as garnishee, to honor the September 1991 writ of attachment on the lottery proceeds of Frank P. Unis. Upon satisfaction of the writ, the Pennsylvania State Lottery shall pay to Kathy McLaren Unis as directed by the decree of distribution issued by the Allegheny County Court.

---

8. Approximately, $23,000.