[No. C018032. Third Dist. Jan. 23, 1995.]

R & P CAPITAL RESOURCES, INC., Plaintiff and Appellant, v.
CALIFORNIA STATE LOTTERY, Defendant and Respondent.

**COUNSEL**

McKernan, Lanam, Bakke, Benson & Bodney and John A. Bodney for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Assistant Attorney General, Jose R. Guerrero and Robert R. Buell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MORRISON, J.**—Prior to recent amendment, the State Lottery Act provided: "The right of any person to a prize shall not be assignable, except that payment of any prize may be paid . . . to a person designated pursuant to an appropriate judicial order. . . ." (Gov. Code, § 8880.32, subd. (g), as amended by Stats. 1992, ch. 500, § 3.) The sole issue presented in this appeal is whether that language permits the voluntary assignment of the right to lottery prize payments. In a declaratory action, the trial court held it did not. Plaintiff, R & P Capital Resources, Inc., the would-be assignee, appeals, urging a different statutory interpretation. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

David Gintowt won $2,575,000 in the California State Lottery in 1987, payable in 20 annual installments of $128,750 each. In May 1993, Gintowt entered into a sale and assignment agreement to assign his right, title and interest in and to six annual payments to R & P Capital Resources in exchange for $400,000. The agreement provided that in order to comply with California law, the parties would obtain a court order approving the assignment. The parties obtained an order from the Butte County Superior Court confirming the assignment.

In 1988, Gary Mawer won $1 million in the California State Lottery (the Lottery), payable in 20 annual installments of $50,000 each. In August 1993, he entered into a similar agreement with R & P Capital Resources to assign four installments in exchange for $100,125. The parties also obtained a court order confirming the assignment.

The Lottery refused to honor the assignments, contending Government Code section 8880.32, subdivision (g) prohibited assignments of lottery prizes.

In October 1993, Gintowt, Mawer, and R & P Capital Resources brought an action for declaratory relief, seeking to compel the Lottery to honor the assignments.[1]

The plaintiffs moved for a judgment on the pleadings, contending the clear, unambiguous language of the statute permitted assignments that were approved by a court. In opposition, the Lottery stated it had consistently interpreted the "appropriate court order" language to refer to final distributions in probate, orders affecting property distributions in dissolution proceedings, and orders made in disputes over ownership rights to the prize; in

---

[1] The case was later dismissed without prejudice as to Gintowt.

short, contested court proceedings settling competing claims to a lottery prize. In support of its position, the Lottery provided the declaration of its chief counsel, stating the Lottery had always interpreted the statute to prohibit assignments. He argued the exceptions in the statute were not assignments, but involved issues of ownership. He noted the Lottery had sponsored legislation to permit payments to be made to the winner's trust.

The parties stipulated to treat plaintiffs' motion for judgment on the pleadings as a motion for summary judgment.

The court found each party's policy arguments plausible, but found dispositive the Lottery's argument that plaintiffs' interpretation of the statute would lead to collusive, nonjusticiable proceedings. It granted declaratory relief in favor of the Lottery, finding Government Code section 8880.32, subdivision (g) prohibits the sale and assignment of lottery prizes as proposed by plaintiffs.

R & P Capital Resources appeals.

### DISCUSSION

The only issue in this case is the interpretation of a statute. That is a question of law that we review de novo. (*County of Los Angeles* v. *Superior Court* (1993) 18 Cal.App.4th 588, 594 [22 Cal.Rptr.2d 409].)

As originally enacted by initiative measure, subdivision (g) of Government Code section 8880.32 (hereafter subdivision (g)) read: "The right of any person to a prize shall not be assignable, except that payment of any prize may be paid to the estate of a deceased prize winner *or to a person designated pursuant to an appropriate judicial order.* The Director, Commission, and State shall be discharged of all further liability upon such payment of a prize pursuant to this subsection." (Ballot Pamp., Prop. 37 analysis by the Legis. Analyst as presented to the voters, Gen. Elec. (Nov. 6, 1984) p. 78; italics added.)

In 1986, subdivision (g) was amended to provide for payment pursuant to Government Code section 21211 when the prize winner is deceased and there is no probate. (Stats. 1986, ch. 55, § 7, p. 154.) An amendment in 1989 set forth the order of distribution when there was no probate. (Stats. 1989, ch. 917, § 5, pp. 3184-3186.) In 1992, the subdivision was amended to "authorize the payment of a prize to a trust established for the benefit of a prize winner." (Legis. Counsel's Dig., Assem. Bill No. 3824, Stats. 1992, ch. 500, § 3.) At all times up to 1994, subdivision (g) read in pertinent part:

"The right of any person to a prize shall not be assignable, except that payment of any prize may be paid . . . to a person designated pursuant to an appropriate judicial order." (Ballot Pamp., Prop. 37 analysis by the Legis. Analyst as presented to the voters, Gen. Elec., *supra*, p. 78; Stats. 1986, ch. 55, § 7, p. 154; Stats. 1989, ch. 917, § 5, p. 3185; Stats. 1992, ch. 500, § 3.) This is the language we interpret.

"In construing a statute, our first task is to look to the language of the statute itself." (*DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters). [Citations.]" (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

The opening language of subdivision (g) is clear and unambiguous; it establishes that lottery winnings are not assignable. An exception is provided for payment to persons designated by an appropriate judicial order. This language is arguably ambiguous. R & P Capital Resources reads it to permit any assignment that is approved by a court. The Lottery contends it applies only to an order following a contested proceeding establishing ownership and does not permit a voluntary assignment. As we explain, we agree with the Lottery.

The provision for payment to persons designated by an appropriate judicial order is an exception to the general rule of no assignment. As an exception, it is strictly construed. (*City of Lafayette* v. *East Bay Mun. Utility Dist.* (1993) 16 Cal.App.4th 1005, 1017 [20 Cal.Rptr.2d 658]; *Barnes* v. *Chamberlain* (1983) 147 Cal.App.3d 762, 767 [195 Cal.Rptr. 417].) "In interpreting exceptions to the general statute courts include only those circumstances which are within the words and reason of the exception. [Citations.]" (*Ibid.*) As originally written, the only other exception in subdivision (g) provided for payment to a decedent's estate. Later, the subdivision was amended to provide for payment where the winner was deceased and there was no probate. These provisions address determining the proper payee when the winner is deceased. They are not truly exceptions to the prohibition against assignment, but speak to the issue of determining ownership. Construing "appropriate judicial order" to refer only to an order following a contested proceeding over ownership would place it in the same category of ownership concerns.

"[T]he provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers,

practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity. [Citations.]" (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].) If the "appropriate judicial order" provision is interpreted to permit a voluntary assignment subject to court approval, the exception would swallow the rule of no assignment. If an assignment could be made with court approval, the general prohibition against assignment would be rendered nearly meaningless. This is so particularly because the statute provides no guidance to courts to determine which assignments should be accepted and which rejected.

Subsequent legislative action also supports the Lottery's interpretation of subdivision (g). In 1992, the subdivision was amended to permit payments to a trust established for benefit of the winner. (Stats. 1992, ch. 500, § 3.) If the assignment to the trust could be accomplished by a court order in an uncontested proceeding, the amendment would have been largely unnecessary. Anyone seeking to assign payments to a trust could have simply gotten a court order. In deference to the Legislature, we assume its acts do not produce meaningless results; therefore, we must construe the amendment as accomplishing something and not as an idle act. (*Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241]; *Clavell* v. *North Coast Business Park* (1991) 232 Cal.App.3d 328, 332 [283 Cal.Rptr. 419].) The amendment permitting payments to a trust was necessary because assignments were not permitted.

In 1994, subdivision (g) was extensively amended. This subsequent legislative change, which allows lottery prize winnings to be used as collateral for a loan, provides the most compelling evidence in support of the Lottery's interpretation. "Although subsequent legislation cannot change the meaning of an earlier enactment, it does supply an indication of legislative intent which may be considered with other factors in arriving at the true intent existing when the legislation was enacted. [Citation.]" (*Aguimatang* v. *California State Lottery* (1991) 234 Cal.App.3d 769, 788 [286 Cal.Rptr. 57].)

In enacting the amendment to Government Code section 8880.32, the Legislature found and declared: "Current law and practice provides that those who win large lottery prizes are paid in annual installments over a period of 20 years. [¶] Some prizewinners, particularly elderly persons or those persons seeking to acquire a small business, may not want to wait to be paid over the course of up to 20 years. [¶] The state should accommodate the desires of those prizewinners who wish to enjoy more of their winnings currently, as provided by this act." (Stats. 1994, ch. 890, § 1.) The bill was

an urgency statute. "In order to allow lottery prizewinners the flexibility to customize the receipt of their prizes to suit their individual and personal circumstances, it is necessary that this bill take effect immediately." (*Id.*, § 4.)

The practice of paying out large prizes in installments over several years indicates an intent to provide *parens patriae* protection for lottery winners against their human frailties and possible excesses.[2] This protection was also effected in the prohibition against assignments of lottery prize winnings. In 1994, the Legislature determined such protection might not always be necessary, but could thwart a winner's reasonable plans for the future. The Legislature responded by permitting prize winnings to be used as collateral for a loan.

Subdivision (g) now reads in part as follows: "(g) The right of any person to a prize shall not be assignable, except that the payment of any prize may be paid to another person, paid to a person designated pursuant to an appropriate judicial order, or assigned as collateral for an obligation owed to another person, as provided in this subdivision."

The statute then sets forth a detailed procedure for assigning the right to receive payment of a prize as collateral for a loan. In such an arrangement, the prize winner and the secured creditor may agree to have payments sent to a bank account, which may be subject to the secured creditor's lien. Notwithstanding the security interest in the prize payments, the Lottery will still send them directly to the winner unless the winner and secured creditor have agreed to have payments sent to a bank, or a court orders that payments be made to the secured creditor. (Subd. (g)(1)(C).) The statute also sets forth the possible methods of payment upon the prize winner's death; one option is "To a person or persons designated under an appropriate judicial order adjudicating rights to the ownership of the prize." (*Id.*, subd. (g)(2)(C)(iii).)

In making this amendment, the Legislature responded to the concerns of prize winners such as Gintowt and Mawer who wished to be able to take immediate advantage of their right to future payments. Obviously, if such prize winners could have done so by simply getting a court to confirm an assignment, this extensive amendment would not have been necessary. The fact the Legislature determined an urgency measure was necessary to give winners flexibility in the receipt of prize winnings confirms the Lottery's position that they had no ability before to assign future payments in return for cash.

---

[2]We recognize that the practice of paying large prizes in installments also reduces the stated value of the prize and saves the Lottery a significant amount of money.

Our conclusion that subdivision (g), as it read before the 1994 amendment, did not permit voluntary assignments of lottery winnings is in accord with the published decisions of other states construing identical "appropriate judicial order" language in their lottery statutes. (*Lotto Jackpot Won by Marianov* (1993) 533 Pa. 402 [625 A.2d 637] [construing "appropriate judicial order" to refer to separate proceeding where disposition of lottery prize is appropriate remedy]; *Converse* v. *Lottery Com'n* (1989) 56 Wn.App. 431 [783 P.2d 1116] [strictly construing exception so it does not swallow rule and recognizing intent to extend *parens patriae* protection to lottery winners]; *McCabe* v. *Director of New Jersey Lottery Com'n* (1976) 143 N.J.Super. 443 [363 A.2d 387] [same].)

R & P Capital Resources argues newer decisions show a trend toward permitting assignments and rejecting the rationale of *McCabe*. It requests this court take judicial notice of several California statutes which use the word "except" and several lower court orders and decisions from other states which permit an assignment. We decline the request. R & P Capital Resources has not shown how the other statutes affect the interpretation of Government Code section 8880.32. None of the orders or decisions are published cases and therefore are not properly citable as authority. (Cal. Rules of Court, rule 977; see *Casella* v. *City of Morgan Hill* (1991) 230 Cal.App.3d 43, 58 [280 Cal.Rptr. 876].)

The judgment is affirmed.

Sparks, Acting P. J., and Davis, J., concurred.