In re John E. KEIM, Debtor.

**Bankruptcy No. 95–5–9294–JS.**

United States Bankruptcy Court,
D. Maryland.

July 25, 1997.

Kenneth F. Davies, Wright, Constable & Skeen, Baltimore, MD, for debtor.

Cyd Beth Wolf, Robert M. Grossbart, Baltimore, MD, for Woodbridge Financial Corp.

## MEMORANDUM OPINION DISALLOWING SALE OF LOTTERY PROCEEDS BY DEBTOR IN POSSESSION

JAMES F. SCHNEIDER, Bankruptcy Judge.

The debtor in possession filed a motion to sell future lottery proceeds free and clear of liens, to which objection was made by the debtor's largest unsecured creditor. For the reasons stated, the proposed sale will be disallowed.

### FINDINGS OF FACT

On July 4, 1987, the debtor, John E. Keim, won the Maryland State Lottery, entitling him to receive $1,000,000 in 20 annual payments of $50,000, before taxes. Ten annual payments remain to be made to the debtor through the Maryland State Lottery Agency (the "Lottery Agency"). On November 12, 1995, the debtor executed a promissory note to Woodbridge Financial Corporation, the

debtor's largest unsecured creditor, evidencing an unsecured loan in the amount of $5,000. *See* Ex. B to Objection to Motion to Sell [P. 28]. Woodbridge is in the business of arranging for the purchase and sale of cash flows, including lottery payments.

On December 15, 1995, the debtor filed the instant voluntary Chapter 11 bankruptcy proceeding, which was later designated as a Chapter 11(a) accelerated case. Order [P. 17] entered April 23, 1996.

On March 29, 1996, the debtor filed a motion [P. 7] to authorize the Lottery Agency to sell his remaining lottery proceeds on the open market free and clear of liens at fair market value without charge to the debtor. The debtor simultaneously filed a disclosure statement [P. 10] and a plan of reorganization [P. 11], to be funded by the proceeds of the sale. According to the terms of the plan, all creditors will be paid in full.

The debtor's annual income includes the $50,000 he receives each year before taxes from the Maryland State Lottery Agency, plus his regular income from a retail used car business. He has one secured creditor, his mortgagee, whose claim is unimpaired and to whom no pre-petition arrearages have accrued. There are only three unsecured creditors, and their claims total $11,754.

On May 24, 1996, Woodbridge objected to the motion to sell, alleging that it had an enforceable contract with the debtor to purchase the lottery proceeds. Woodbridge also argued that the Lottery Agency does not have the authority to sell the lottery proceeds and that such a sale would be an *ultra vires* act by the Lottery Agency.

According to Woodbridge, it entered into a contract with the debtor pursuant to which Woodbridge agreed to pay the debtor an additional $70,000 in exchange for an assignment of one-half of the annual lottery payments due for the next five years, totaling $125,000 prior to tax withholdings. The debtor denies entering into a contract with Woodbridge. No written, fully-executed contract has been submitted into evidence by either party. The only evidence of a contract submitted by Woodbridge is a photocopy of an unsigned proposed disclosure statement,

which indicated that a plan of reorganization will be funded by the proceeds of the sale to Woodbridge. *See* Ex. A to Objection to Motion to Sell [P. 28]. The Lottery Agency opposed the sale of the proceeds by the debtor to Woodbridge on the grounds that such a sale would violate the State lottery law, violate the doctrine of *parens patriae*, cause an administrative burden to the Lottery Agency and result in fees charged to the debtor by an unregulated finance company.

On July 9, 1996, the debtor submitted an affidavit of the Acting Director of the Lottery Agency, William W. Saltzman, which evidenced the Lottery Agency's willingness to sell the lottery winnings at their fair market value on the open market at no charge to the debtor, conditioned upon an order of this Court to that effect:

> [I]f the Debtor's motion is granted and the Lottery Agency is directed to sell the Debtor's Lottery annuity, the Lottery Agency will sell the annuity as directed in the Court Order for its fair market value within thirty days of the Order authorizing the sale. The proceeds of the sale, less required federal and state tax withholding, will be turned over to the Debtor in possession or to the Trustee, if one is appointed. The Maryland State Lottery Agency will not charge any costs or fees to the Debtor in connection with the sale.

Affidavit of William W. Saltzman [P. 35] ¶ 3.

The Lottery Agency estimated that the sale of the lottery proceeds on the open market will generate gross proceeds in the approximate amount of $343,000. After withholding federal and state taxes, the net proceeds payable to the debtor in possession are estimated to be approximately $221,000.

Woodbridge objected to the debtor's disclosure statement on the grounds that it contained "incorrect information" relating to the liquidation analysis and that "the Disclosure Statement should accurately inform creditors that the Debtor is seeking through a Section 363 motion to solicit an order from this Court authorizing the State to do what it is otherwise not authorized to do under state law ..." Objection to Disclosure to Statement [P. 39]. Woodbridge also objected to the confirmation of the debtor's plan of reorganization on the same grounds as its objec-

tion to the motion to sell. At a hearing on this matter, Woodbridge represented that it had made a second offer to purchase the remaining lottery proceeds from the debtor for $285,000, pursuant to which the debtor would receive approximately $190,000 after federal and state taxes are withheld.

## CONCLUSIONS OF LAW

### LOTTERY WINNINGS ARE PROPERTY OF THE ESTATE

■ Upon the filing of a bankruptcy petition, a bankruptcy estate is created which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The debtor's interest in the lottery winnings became property of the estate upon the filing of his petition for relief. *In re Miller*, 16 B.R. 790 (Bankr.D.Md.1982).[1]

In *Miller*, Judge Harvey M. Lebowitz sustained the objection of the Chapter 7 trustee to the debtor's exemption of lottery winnings from his bankruptcy estate, and stated:

It is beyond question that the Debtor's interest, albeit in some respects a future interest, in the lottery winnings became property of the estate upon the filing of his petition for relief under Chapter 7 of the Bankruptcy Code. The scope of § 541(a) is broad and all-embracing. *In re Ford*, 3 B.R. 559, 568–70 (Bankr.D.Md.1980), *aff'd per curiam sub nom. Greenblatt v. Ford*, 638 F.2d 14 (4th Cir.1981). *Cf. In re Ryan*, 15 B.R. 514, Bankr.L.Rep. (CCH) ¶ 68,466 (Bankr.D.Md.1981). The Court is unconvinced that lottery winnings payable pursuant to an annuity contract are subject to a "restriction on the transfer of a beneficial interest of the debtor in a trust" within the meaning of the § 541(c)(2) limitation on the scope of § 541(a). Congress intended § 541(c)(2) to preserve "restrictions on transfer of a spendthrift trust."

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 369 (1977); S.Rep.No. 95–989, 95th Cong., 2nd Sess. 83 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. Thus, the debtor's interest in the lottery winnings are property of the estate subject to any valid exemption.

16 B.R. at 791. Judge Lebowitz also held that the lottery winnings could not be exempted as annuities "on account of illness, disability, death, age, or length of service" under Section 522(d)(10)(E).

The instant case is factually similar to *Miller* in that the debtors in both cases won the Maryland lottery before they filed their bankruptcy petitions. However, Mr. Miller was a Chapter 7 debtor fighting with his trustee over the right to keep his winnings exempt from estate administration, while Mr. Keim is a Chapter 11 debtor in possession who would like to liquidate his future winnings to pay the nominal claims of his creditors, while retaining for himself the major portion of the proceeds that he could not have otherwise liquidated.

### POWERS OF A DEBTOR IN POSSESSION UNDER SECTION 363

■ As a debtor in possession with the same rights and powers of a trustee, *see* 11 U.S.C. § 1107(a),[2] Mr. Keim may sell property of the estate. With respect to use, sale, or lease of property of the estate, Section 363(b)(1) of the Bankruptcy Code provides:

The trustee [or debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b)(1).

### WOODBRIDGE HAS STANDING TO BE HEARD

■ As a creditor, Woodbridge is a party in interest as defined in Section 1109(b) of

---

**1.** Other courts have held that debtors' interests in lottery winnings are property of the estate. *See e.g., In re Pizzi*, 153 B.R. 357 (Bankr.S.D.Fla. 1993); *Sirek v. Dalton (In re Dalton)*, 146 B.R. 460 (Bankr.D.Ariz.1992); *Wallick v. Rhode Island State Lottery Comm'n (In re Skog)*, 144 B.R. 221 (Bankr.D.R.I.1992); *In re Meyers*, 139 B.R. 858 (Bankr.N.D.Ohio 1992); *Boyn v. Brown (In re Brown)*, 82 B.R. 967 (Bankr.N.D.Ind.1988), *aff'd* 86 B.R. 944 (N.D.Ind.1988).

**2.** Section 1107(a) provides:

Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a).

the Bankruptcy Code and therefore has standing for purposes of contesting the motion to sell, disclosure statement and plan.[3] Section 1109(b) must be construed broadly to allow all parties affected to appear and be heard. *Unsecured Creditors' Committee v. Marepcon Financial Corporation (In re Bumper Sales, Inc.)*, 907 F.2d 1430 (4th Cir. 1990); *In re River Bend–Oxford Associates*, 114 B.R. 111 (Bankr.D.Md.1990).

## WOODBRIDGE DOES NOT . HAVE AN ENFORCEABLE CONTRACT

■ Whether the debtor and Woodbridge executed a contract of sale before or after the debtor filed his bankruptcy petition, the contract is not enforceable because its assumption by the debtor has not been approved by the bankruptcy court pursuant to Section 365(d)(2), which provides:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee [or debtor in possession] may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, may order the trustee [or debtor in possession] to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2). Proceedings to assume or reject a contract and to require a debtor in possession to assume or reject a contract are contested matters and must be commenced by the filing of a motion. Fed. R. Bankr.P. 6006 and 9014. Because neither party has filed such motions and the Court has not entered such orders, no enforceable contract now exists between the debtor and Woodbridge. *See Chbat v. Tleel (In re Tleel)*, 876 F.2d 769 (9th Cir.1989); *McLean Industries, Inc. v. Medical Laboratory Automation, Inc. (In re McLean Industries, Inc.)*, 96 B.R. 440 (Bankr.S.D.N.Y.1989); *Walat Farms, Inc. v. United States Department of Agriculture (In re Walat Farms, Inc.)*, 69 B.R. 529 (Bankr.E.D.Mich.1987); *In re A.H. Robins Co., Inc.*, 68 B.R. 705 (Bankr. E.D.Va.1986). Furthermore, the plan proposed by the debtor expressly rejects all executory contracts, evidencing his intent that any contract between him and Woodbridge not be assumed..

## UNRESTRICTED ASSIGNMENT OR SALE OF LOTTERY WINNINGS VIO-LATES THE STATE LOTTERY LAW AND IS AGAINST PUBLIC POLICY

■ However, a debtor in possession should not be permitted to use the bankruptcy process to achieve a personal benefit that could not be achieved outside of bankruptcy, namely the liquidation of his future lottery winnings. While Section 363(b)(1) allows a debtor to sell property of the estate, *see* 11 U.S.C. § 363(b)(1), Section 9–122(b) of the State Government Article of the Annotated Code of Maryland prohibits the assignment of lottery winnings by the recipient in the absence of an "appropriate court order." Md. State Gov't Code Ann. § 9–122(b).[4]

---

3. Section 1109(b) provides:
   A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, *a creditor*, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.
   11 U.S.C. § 1109(b) (emphasis added). Woodbridge has standing to object to the motion to sell, disclosure statement and plan because it is an unsecured creditor. If it were only a "frustrated bidder," however, it would not have standing to object to the motion to sell. *See, e.g., Cello Bag Co., Inc. v. Champion International Corp. (In re Atlanta Packaging Products, Inc.)*, 99 B.R. 124 (Bankr.N.D.Ga.1988); *In re Planned Systems, Inc.*, 82 B.R. 919 (Bankr.S.D.Ohio 1988); *Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272 (N.D.Ga.1985); *In re NEPSCO*, 36 B.R. 25 (Bankr.D.Me.1983).

4. The Maryland State Lottery Law is contained in Sections 9–101 through 9–125. Section 9–122(b) provides in pertinent part:

   (1) Except as otherwise provided in this subsection, § 10–113.1 of the Family Law Article, and Article 27, § 640B of the Code, a prize won under this subtitle is not assignable.

   \*   \*   \*   \*   \*   \*

   (3) Under appropriate court order, a prize won under this subtitle may be paid to a person other than the winner.
   Md. State Gov't Code Ann. § 9–122(b)(1) and (3). The Code of Maryland Regulations provides:
   The right of any person to a prize drawn may not be assignable, except that payment of any prize drawn may be paid to the estate of a deceased prize winner, and except that any person pursuant to an appropriate judicial or-

"Appropriate court order" means a court order directing payment of lottery winnings to a third party, namely a creditor or co-owner who contests the right of the nominal winner to receive or to continue to receive prize winnings.

This Court adopts the reasoning of the Commonwealth Court of Pennsylvania as expressed in *In re Lotto Jackpot Prize of Dec. 3, 1982*, 144 Pa.Cmwlth. 658, 602 A.2d 402 (1992), *aff'd*, 533 Pa. 402, 625 A.2d 637 (1993). In that case, the court did not allow the debtor to sell his lottery winnings under a lottery statute similar to Maryland's:

> The State Lottery Law nowhere provides that a winner of a prize may sell or otherwise assign the right to a prize. Instead, [it] expressly prohibits such transactions. We could not properly construe the phrase "appropriate judicial order" as creating an exception which effectively would swallow this general prohibition. That would be contrary to the General Assembly's direction ... that in construing a statute, we must presume "[t]hat the General Assembly intends the entire statute to be effective and certain." Instead, *we hold that in context, the language "appropriate judicial order" refers to an order in some other proceeding in which a court may make a disposition of the lottery prize as a remedy.*

144 Pa.Cmwlth. 658, 602 A.2d 402 (1992), *aff'd*, 533 Pa. 402, 625 A.2d 637 (1993) (emphasis added).[5] *See also R & P Capital Resources, Inc. v. California State Lottery*, 31 Cal.App.4th 1033, 37 Cal.Rptr.2d 436 (1995) (lottery winnings are assignable only upon an "appropriate court order" which follows a contested proceeding establishing ownership rights in the winnings, not a proceeding to authorize a voluntary assignment).

Courts in other jurisdictions with lottery laws similar to that of Maryland have also declined to enter orders authorizing voluntary assignment of lottery proceeds. *See, e.g., In re Lotto Jackpot Prize of Dec. 3, 1982*, 144 Pa.Cmwlth. 658, 602 A.2d 402 (1992), *aff'd*, 533 Pa. 402, 625 A.2d 637 (1993) and *McCabe v. Director of New Jersey Lottery Commission*, 143 N.J.Super. 443, 363 A.2d 387 (1976). *See also Walker v. Rogers*, 272 Ill.App.3d 86, 208 Ill.Dec. 815, 650 N.E.2d 272 (1995) (allowing voluntary assignment of lottery winnings to third party pursuant to court order would render the general prohibition of assignment virtually meaningless); *R & P Capital Resources, Inc. v. California State Lottery*, 31 Cal.App.4th 1033, 37 Cal.Rptr.2d 436 (1995) (lottery winnings are assignable only upon an "appropriate court order" which follows a contested proceeding establishing ownership rights in the winnings, not a proceeding to authorize a voluntary assignment); *Woodbridge Partners Group, Inc. v. Ohio Lottery Commission*, 99 Ohio App.3d 269, 650 N.E.2d 498 (1994) (assignment should be allowed only when purpose of statute would not be frustrated). *But cf. Peterson v. District of Columbia Lottery and Charitable Games Control Board*, 673 A.2d 664 (D.C.1996) (lottery winnings were freely assignable because statute did not have an anti-assignment provision).

The granting of approval by a bankruptcy court to such an unrestricted sale of lottery proceeds would send an unintended invitation to file bankruptcy petitions to lottery winners who would like to cash in their future winnings. Although a sale of lottery winnings may be appropriate in some circumstances, the sale in this case is clearly inappropriate because the ratio of debt ($11,754) to sale proceeds ($343,000) is grossly disproportionate.

■ This Court expresses no opinion as to whether the agreement of the Lottery Agency to the sale of the lottery proceeds amounts to an *ultra vires* act. An act of a governmental agency is *ultra vires* if it is

---

der may be paid the prize to which the winner is entitled.
COMAR 14.01.05.04.

**5.** Section 8 of the Pennsylvania Lottery Law provided:

> [N]o right of any person to a prize shall be assignable, except that payment of any prize

drawn may be paid to the estate of a deceased prize winner, and, except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled.

144 Pa.Cmwlth. 658, 602 A.2d 402 (1992), *aff'd*, 533 Pa. 402, 625 A.2d 637 (1993) (quoting 72 P.S. § 3761–8).

beyond the express or implied powers conferred by statute. *See Dalton v. Specter,* 511 U.S. 462, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994) (citing *Larson v. Domestic & Foreign Commerce Corporation,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)).

The debtor in possession may use a portion of his annual lottery payment of $50,000 to fund his Chapter 11 plan. Because of the fact that he has ample resources from which to pay his creditors in full, such a plan must provide a 100% payout to the unsecured creditors. Because the sale will be disallowed, the objections of Woodbridge to the plan and disclosure statement are moot.

ORDER ACCORDINGLY.

### ORDER DISALLOWING SALE OF LOTTERY PROCEEDS

For the reasons stated in the Memorandum Opinion filed simultaneously herewith, the debtor's motion to sell lottery proceeds free and clear of liens [P. 7] is hereby DENIED. The objections filed by Woodbridge Financial Corporation to the debtor's disclosure statement and plan of reorganization are MOOT.

SO ORDERED.