Filed 6/16/15  That v. Alders Maintenance Assn. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DINH TON THAT,<br><br> Plaintiff and Appellant,<br><br> v.<br><br>ALDERS MAINTENANCE ASSOCIATION et al.,<br><br> Defendants and Respondents. | G049216<br><br>(Super. Ct. Nos. 07CL05523, 30-2009-00122398, 30-2010-00394102)<br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Janet Pesak, Temporary, Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Dinh Ton That, in pro. per., for Plaintiff and Appellant.

Law Offices of Nicholas T. Basakis and Nicholas T. Basakis  for Defendants and Respondents.

\*          \*          \*

Appellant Dinh Ton That appeals from the trial court's order declaring him a vexatious litigant pursuant to Code of Civil Procedure section 391.[1]  This order was based on a series of lawsuits against respondents Alders Maintenance Association (Alders or the Association) and 16 others, including property management companies, their representatives, volunteer members of the Alders Board of Directors (Board), and other homeowners who volunteered to assist in Board elections.  This consolidated action involved three specific lawsuits, which were concluded after this motion was decided, by way of terminating sanctions against appellant.  Appellant has also brought two other suits which have since been concluded in respondents' favor, as well as a small claims matter dismissed for lack of jurisdiction.  He has taken three prior appeals to this court.

We conclude the evidence presented to the trial court demonstrated the vexatious litigant order was amply justified.  Accordingly, the order is affirmed.

I

FACTS

The Alders community is a 248-unit condominium development in Irvine.  It is governed by respondent Alders through the Board pursuant to the Davis-Stirling Common Interest Development Act (the Act).  (Former Civil Code, § 1350 et seq.; now Civil Code, § 4000 et seq.)  Appellant served as a member of the Board from 2002 until November 2006, when he was recalled by the membership.  He was the sitting Board president at the time.

Pursuant to former Civil Code sections 1363.03 through 1363.09, which were adopted by the legislature in 2006, in September 2006, the Board promulgated new election rules, specifying qualifications for Board members, nomination procedures, and voting procedures.  One of the qualifications was that prospective Board members must

---

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

be in good standing with Alders, and could not be in litigation with the Association, presumably due to the inherent conflict of interest.

Appellant, was directly impacted by these changes because he was not a member in good standing at the time. According to Alders, appellant took this personally, viewing it as part of a wide-ranging conspiracy to deny him a seat on the Board.

*First Lawsuit (That Consolidated I)*

After the annual election in July 2007, appellant filed his first lawsuit, *That v. Professional Community Management* (Super. Ct. Orange County, 2007, No. 07CL05523). His initial complaint was 41 pages long and 36 lines per page. It alleged causes of action for "temporary injunctive, declaratory, permanent injunctive reliefs 1 & 2, violation of [Business and Professions Code sections] 17200 and conspiracy, violation of election laws & conspiracy, quasi-abuse of process & conspiracy, pattern of racketeering (R.I.C.O.)." Each claim related to the conduct of the 2007 Board election. Appellant sought reinstatement to the Board, the invalidation of the election rules, and other similar relief, alleging a conspiracy against him as well as unfair business practices and racketeering.

Like each of his subsequent lawsuits, it was filed on his own behalf, although that did not prevent him from demanding attorney fees. His alleged compensatory damages were $7,561.91, although he also sought double or treble damages, punitive damages, and injunctive relief.

Several of these claims were disposed of on demurrer in February 2008, including the Business and Professions Code section 17200 claim. The three claims primarily related to the conduct of the election were tried, resulting in a directed verdict against appellant in December 2008. The court found appellant failed to meet his burden of proof and failed to establish any liability on behalf of the individual plaintiffs.

According to respondents, "all of the motions and ex parte applications he filed, including a demurrer to defendants' answer, were denied. Additionally, he was sanctioned for discovery abuses."

Appellant then appealed the entire case, including the demurrers, to the appellate division of the superior court. In February 2010, most of the trial court's decisions were upheld, including the finding appellant had failed to meet his burden of proof on the claim seeking an injunction to be restored to the Board, and general violation of election laws. The court also found the demurrer on the Racketeering Influenced Corrupt Organizations Act (RICO) claim was properly sustained. The appellate division granted a limited reversal as to the sustained demurrers on certain claims, concluding appellant should have been granted leave to amend to plead injury in fact, primarily on the Business and Professions Code section 17200 claims, allegations missing from appellant's earlier pleadings. The court also redesignated the case as an unlimited civil matter. We rejected appellant's attempt to transfer his appeal from the appellate division to this court (G043471, Apr. 8, 2010).

Upon remand, appellant attempted to amend his complaint. His third amended complaint, filed in August 2010, was 112 pages and included 43 footnotes, extensive citations and legal arguments. His claims under Business and Professions Code section 17200 resulted in a demurrer sustained without leave to amend in October 2010, on the grounds that he suffered no injury in fact. His further request for attorney fees, creation of a "legal trust fund"[2] and punitive damages were stricken. This apparently left only a claim for declaratory relief directly relating to the election rule requiring candidates not be in litigation with the Association. Defendants answered on October 28, 2010.

---

[2] Appellant's apparent intent here was to require respondents to put money into a "legal trust fund" that other homeowners could use to sue the Association.

4

*Second Lawsuit (That Consolidated II)*

While *That Consolidated I* was still at the pleading stage, appellant filed *That v. Professional Community Management* (Super. Ct. Orange County, No. 30-2009-00122398) (*That Consolidated II*) on April 30, 2009. The first paragraph of the complaint acknowledged it was a "continuation" of the related case, *That Consolidated I*. The 30-page complaint alleged most of the same causes of action as *That Consolidated I*, including violation of Business and Professions Code section 17200, the RICO statute (18 U.S.C. 1961 et seq.), and conspiracy, and again it sought injunctive relief, compensatory damages, and attorney fees, despite the fact that appellant was representing himself. He again requested a "legal trust fund."

All of the wrongs appellant asserted were related to his purported exclusion from the 2008 Board election and were essentially duplicative of the claims in *That Consolidated I*. He claimed Alders enacted "illegal" election laws and wrongfully disciplined him, and sought to invalidate the rule requiring members be in good standing to run for office.

*Third Lawsuit (That Consolidated III)*

On July 28, 2010, appellant filed *That v. Alders Maintenance Association* (Super. Ct. Orange County, No. 30-2010-00394102) (*That Consolidated III*). This complaint addressed the 2009 and 2010 Alders elections, and again stated a cause of action for violation of Business and Professions Code section 17200, repeated the attempt to invalidate the "member in good standing rule" and other similar issues related to the election. Appellant again sought the establishment of a "legal trust fund."

*Additional Cases*

In addition to the cases discussed above, appellant filed two other cases in superior court. On March 9, 2009, he filed *That v. Alders Maintenance Association*

5

(Super. Ct. Orange County, No. 30-2009-0011969) (*That IV*), a petition for a preemptory writ of mandate. This matter was related to an attempted recall of the Board sitting at that time, which respondents claim was orchestrated by appellant. After the recall failed for lack of quorum, the meeting was adjourned. Appellant contended the recall should have been continued to another date and sought a writ to reopen those proceedings. The petition was summarily denied,[3] as was a motion for reconsideration. Appellant filed an appeal with this court, which was dismissed after the regular annual election was conducted. (G042070, app. dism. Oct. 1, 2009.) Upon remittitur, appellant attempted to "amend" his writ petition by adding causes of action, which was rejected by the trial court as a procedurally improper effort to convert a writ petition into a complaint.

Undeterred, on March 5, 2010, nearly 13 months after the recall election, appellant filed *That v. Alders Maintenance Association* (Super. Ct. Orange County, No. 30-2010-00350755) (*That V*), again complaining about the recall election under the Act and, in an amended complaint, asserting a claim under Business and Professions Code section 17200. Respondents' demurrer was sustained and respondents were awarded some $15,000 in attorney fees.

Appellant appealed, which resulted in this court's partially published opinion in *That v. Alders Maintenance Assn.* (2012) 206 Cal.App.4th 1419.[4]

Thus, appellant has filed a total of five superior court actions, one small claims action, and three appeals against respondents. As of the date the vexatious litigant

---

[3] Appellant originally tried to bring this claim as one for injunctive relief in small claims court, which dismissed the matter for lack of jurisdiction.

[4] Our opinion in that case was issued after appellant was declared a vexatious litigant and is therefore of limited relevance, but we note that respondents prevailed on every issue with the exception of the availability of statutory attorney fees. We agreed with respondents that appellant's "decision to file this lawsuit was indeed frivolous . . . ." (*That v. Alders Maintenance Association, supra,* 206 Cal.App.4th at p. 1428, fn. omitted.) This court denied rehearing, and the Supreme Court summarily denied review.

motion was filed, plaintiff had not won a lasting victory on any issue; indeed, he had lost at nearly every turn.

*The Vexatious Litigant Motion*

On December 17, 2010, respondents moved in *That Consolidated III* to have appellant declared a vexatious litigant. They argued appellant attempted to relitigate issues repeatedly in subsequent lawsuits after those issues had been decided in previous ones and he engaged in frivolous tactics intended solely to harass. Respondents pointed to the same issues repeatedly raised in cases against the same set of defendants in all of the related matters, resulting in $200,000 in attorney fees thus far. The five lawsuits were essentially based on the same set of facts and legal issues, such as the "member in good standing rule." The trial court ruled against him on this issue in *That Consolidated I* and the appellate division declined to disturb that ruling in February 2010. Yet when appellant filed *That Consolidated III* in July 2010, he raised the same issue. Despite the court's rulings dismissing his claims based on Alders' decision to enact new election rules, which was dismissed twice on demurrer in *That Consolidated I*, he continued to bring the same claim in subsequent cases.

Respondents also argued that appellant engaged in frivolous tactics such as frustrating discovery, resulting in several thousand dollars in sanctions. He refused to dismiss his appeal on *That IV*, his request for a writ of mandate regarding the recall election, despite the fact the annual election had already been held, requiring respondents to instead file a motion to dismiss in this court. Despite his self-represented status, appellant continued to request attorney fees or a "legal trust fund" in each case, despite the fact motions to strike this language had been consistently granted.

Appellant filed a four-page opposition. If he filed supporting evidence, it is not included in the record. He argued nothing had been "finally determined" and accordingly the motion was baseless. He also stated: "It is unfortunate that this court

7

might dislike self-representing parties and might have a propensity to invoke the vexatious litigant statute as a means to effect such dislike against self-representing parties." He offered no evidence of this purported "dislike." He claimed his pleadings, despite running to dozens of pages and including legal argument and case citations, "were and are as necessitated by the legal process."

Appellant pointed to his sole success at the appellate division as evidence his claims had merit (while ignoring those claims were ultimately dismissed on remand). He claimed because of the lack of a transcript, the appellate division had no choice but to affirm most of the judgment in *That Consolidated I* (a fact the appellate division does not mention). Appellant further argued he was justified in bringing a new action for each election. Finally, he argued the vexatious litigant statute was preempted by the section of the Act pertaining to remedies (former Civil Code section 1363.09). He cited, without argument, a single case that involved neither the Act, the vexatious litigant statute, or principles of preemption.

In reply, respondents pointed to three specific areas appellant persisted in relitigating: attorney fees, Business and Professions Code section 17200, and the RICO statute. They also argued his contention that new lawsuits were necessary was simply wrong: "Cutting through the mostly incoherent babble of plaintiff's bloated pleadings, it is evident that plaintiff takes issue with the ALDERS' election rules. It takes but one proceeding to adjudicate the legality [of] those rules and the statutes that govern them, not many. It is unnecessary to file a new action every time a purportedly invalid or illegal rule is enforced. Final adjudication of the merits of such rules will govern their enforcement [in] subsequent settings."

On February 25, 2011, respondents' motion was granted, and appellant was ordered to post a bond of $25,000. A prefiling order, preventing appellant from filing additional actions without approval of the presiding judge, was entered on March 1, 2011.

8

On July 8, 2011, the court granted, over appellant's opposition, respondents' motion to consolidate the three matters we have been referring to as *That Consolidated I, II,* and *III.*

Ultimately, the trial court dismissed the three consolidated actions on November 9, 2012. The judgment, dated January 25, 2013, states that appellant "was consistently uncooperative in providing responses to written discovery in each of the three cases. Defendants filed numerous motions to compel against plaintiff, which were granted in whole or in part. Plaintiff further ignored court orders concerning his failure to provide basic discovery responses. Plaintiff was sanctioned in each motion to compel, but failed to pay any of said sanctions." The court, "based upon plaintiff's abuse of written discovery" ordered the appointment of a discovery referee, found neither party had demonstrated an inability to pay, and ordered the parties to split the fees equally. Despite the court granting an opportunity to do so, appellant failed to file a sealed statement of worth and income if he wished to challenge the order. Appellant then refused to pay his share, and respondents filed a motion for an order compelling him to do so, or alternatively, for terminating sanctions. The court issued an order to show cause, but appellant filed no response. Accordingly, the court dismissed the consolidated cases and ordered appellant to pay reasonable attorney fees and costs.

On June 21, 2013, costs and fees were awarded in the amount of $305,953.99. In its order, the court noted appellant's opposition was procedurally defective for numerous reasons, including exceeding the page limit, and failure to include tables of contents or authorities. Appellant "was warned about these types of defects in prior pleadings."

Appellant filed a notice of appeal listing 33 issues, but he failed to comply with the vexatious litigant statute by demonstrating to this court that any of those issues had merit. Only the vexatious litigant determination itself did not require such a showing, and accordingly, that is the only issue on appeal.

9

## II

## DISCUSSION

*Appellant's Briefing*

We begin with a word about appellant's briefing in this appeal. In the interests of justice and to assure parties their arguments have been heard and considered, our general practice is to address the specific arguments the parties raise, no matter how legally incorrect or unsupported by the record those arguments might be. But in some instances, no matter how much time or effort is expended attempting to fathom just what a party is attempting to say, the arguments presented to us are simply of no use in the appellate process. This is one of those cases.

Appellant's opening brief alone is 49 pages and 13,995 words — just short of the maximum allowable word count, the same word count that must be followed in most multimillion-dollar complex litigation matters with a multitude of legal issues. It has sections that start at "A" and continue to "EE" — roughly 30 separate sections, all on the single legal issue of whether the vexatious litigant order was justified.

This is an example of one such heading, in which "VLS" stands for vexatious litigant statute: "L. This Logical Bar to Nullification (Dilution, Corruption) of Necessary-conditions Alternatives Is Reinforced *by the Additional Strictness of Interpretation* Arising from the *Generality* of VLS as a Remedial Statute Which by Categorizing Category-of-Plaintiffs to be Restrained Works in Opposite Direction To, and must Therefore Yield To, More *Specific* Other Remedial Statutes Protecting Category-of-Plaintiffs From Category-of-Defendants and Prohibiting Specific Conduct by Category-of-Defendants Against Category-of-Plaintiffs, among Which Other Remedial Statutes Article_2 (Civ.C._§_1364.09(b)) Specifically Proscribes, and Therefore Pre-empts, the Remedies of VLS, and Thus VLS Itself."

We believe appellant is attempting to make some argument about the scope of the vexatious litigant statute, or perhaps that it is preempted by some other law (which

10

he argued slightly more coherently below), but frankly, we cannot be certain. This heading is followed by another heading which is followed by a one-sentence argument that does not support the heading. Neither does the statute cited in the heading.[5] Other headings have no arguments accompanying them, or include one sentence which contains no argument or authority. Unfortunately, this is a typical rather than an unusual feature of appellant's briefing style.

As the trial court noted at one point: "Substantively, the opposition is virtually incomprehensible. It consists of quotations from cases summaries and other authorities that lack relevance and materiality. Plaintiff's attempts at analysis are illogical and unsound. Plaintiff was warned about this kind of briefing in prior pleadings." Appellant is also unnecessarily accusatory toward respondents. In his reply brief, appellant accuses respondents, without basis, of "fraud on the Court of Appeal" and attempting a "cover up."

Our scope of review is limited to issues that have been adequately raised and are supported by analysis.[6] (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) Authority must be on point. (*Krupnik v. Hartford Accident & Indemnity Co.* (1994) 28 Cal.App.4th 185, 199; *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991,

---

[5] Civil Code section 1364.09 does not appear to have ever existed. Civil Code section 1364, along with the remainder of Title 6 of Part 4 of Division 2 of the Civil Code, was repealed effective January 1, 2014, pursuant to a comprehensive reorganization of the Act. The Act was recodified on that date starting with Civil Code section 4000. (Stats. 2012, ch. 180, § 1.) Appellant's opening brief was filed on August 7, 2014.

In the event appellant is referring to former Civil Code section 1363.09, subdivision (b), that section provides a prevailing member the right to reasonable attorney fees and costs. There is no authority for the proposition that it preempts any other statute.

[6] We also disregard any attempts by appellant to bring in matters outside the record on appeal. He attempts to incorporate by reference the clerk's transcript in case No. G044799, which is patently improper. The rule permitting such incorporation only applies in the same action. (Cal. Rules of Court, rule 8.147(b)(1).)

1003-1004.) When an appellant raises an issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]" (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.) Moreover, "failure of an appellant in a civil action to articulate any pertinent or intelligible legal argument in an opening brief may, in the discretion of the court, be deemed an abandonment of the appeal justifying dismissal." (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119.)

Accordingly, to the considerable extent appellant's arguments are simply unfathomable or incoherent, we cannot address them. While we would be within proper appellate procedure to simply deem appellant's arguments waived or to dismiss the appeal altogether, we shall instead conduct a review, based on the record, as to whether the court appropriately granted respondents' motion to designate appellant a vexatious litigant.

*Request for Judicial Notice*

On March 11, 2015, well after briefing was closed, appellant requested this court take judicial notice of certain documents relating to trial court proceedings in several entirely unrelated matters: *Townsend v. Brothers International* (Super. Ct. Orange County, No. 30-2010-00389396) and *Wittenberg v. Beachwalk Homeowners Association* (Super. Ct. Orange County, No. 30-2010-00415477) and three related cases. These documents include pleadings, reporter's transcripts, and minute orders. He claims that in a *Townsend* pleading, for example, Judge Robert Moss did not criticize the page numbering of a demurrer, while using the same infraction as a basis for applying the vexatious litigation statute to appellant. He also asserts the trial court documents in the *Wittenberg* cases support his arguments in the underlying matters.

First, this request is untimely. Appellant refers to both matters in his opening brief, and he was therefore aware of them at that time. Indeed, he states his intent to bring a request for judicial notice in his opening brief, yet he neglected to do so

12

at any time when respondents could have discussed the documents in their own brief. He claims these documents were "left out from [the] record on appeal" yet he took no action to remedy this purported defect until shortly before oral argument. Requests for judicial notice should generally be made "well before" the briefing stage (*People v. Preslie* (1977) 70 Cal.App.3d 486, 494), not after briefing is closed.

Moreover, a court will not normally take judicial notice of matters that were not brought to the attention of the trial court or presented to the trier of fact. (*Coy v. County of Los Angeles* (1991) 235 Cal.App.3d 1077, 2083, fn. 3.) As appellant admits, these were not.

Finally, even if these other procedural defects were not present, we would decline to take judicial notice of these documents. Contrary to appellant's argument, judicial notice of these documents is not proper under the "mandatory" judicial notice statute, Evidence Code section 451. There is a provision under the "permissive" judicial notice statute, Evidence Code section 452, subdivision (d), which permits us to take judicial notice of "[r]ecords of . . . any court of this state," but does not require us to do so. (Evid. Code, § 459, subdivision (a).)

We choose not to exercise that discretion. The trial court records offered by appellant are not citable as legal authority. (*R & P Capital Resources, Inc. v. California State Lottery* (1995) 31 Cal.App.4th 1033, 1040; Cal. Rules of Court, rule 8.1115.) That is exactly the purpose for which appellant offers the *Wittenberg* documents, and we decline appellant's invitation to permit an end run around this principle by taking judicial notice of uncitable documents. Second, the *Townsend* documents are simply irrelevant. The fact that one party in one other matter was or was not given precisely identical treatment to appellant is neither here nor there, and does not speak to the issue at hand. Matter to be judicially noticed must be relevant to a material issue. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422-423, fn. 2.) Accordingly, appellant's request is denied.

13

*Statutory Framework and Standard of Review*

As pertinent here, subdivision (b) of section 391 defines a vexatious litigant as "(2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined," or "(3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay."

"The vexatious litigant statutes (§§ 391-391.7) are designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants. [Citation.] [Citations.]" (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169.)

"Section 391.1 provides that in any litigation pending in a California court, the defendant may move for an order requiring the plaintiff to furnish security on the ground the plaintiff is a vexatious litigant and has no reasonable probability of prevailing against the moving defendant. The action is stayed pending determination of the motion. (§ 391.6.) If, after a hearing, the court finds for the defendant on these points, it must order the plaintiff to furnish security 'in such amount and within such time as the court shall fix.' (§ 391.3.) The plaintiff's failure to furnish that security is grounds for dismissal. (§ 391.4.)" (*Shalant v. Girardi*, *supra*, 51 Cal.4th at p. 1170.) Additionally, "'Section 391.7 "operates beyond the pending case" and authorizes a court to enter a "prefiling order" that prohibits a vexatious litigant from filing any new litigation in

14

propria persona without first obtaining permission from the presiding judge. [Citation.]'"
(*Ibid.*)

The trial court's determination that an individual is a vexatious litigant is an exercise of its discretion. We presume the order is correct and imply the findings necessary to support the judgment, upholding the ruling if it is supported by substantial evidence. (*Garcia v. Lacey* (2014) 231 Cal.App.4th 402, 407.) When reviewing for substantial evidence, we "view the evidence most favorably to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. [Citation.] Substantial evidence is evidence of ponderable legal significance, reasonable, credible and of solid value. [Citation.]" (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1100.)

*The Instant Order*

This is not a close case, and we find no abuse of discretion in the trial court's order. With respect to section 391, subdivisions (b)(2) and (b)(3) are both grounds for declaring a party a vexatious litigant. Because appellant's conduct falls so squarely within subdivision (b)(3), we need not further address (b)(2). Under subdivision (b)(3), a vexatious litigant is a self-represented person who "repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay."

There are myriad examples of such behavior by appellant. He continued to raise issues previously rejected by the court in subsequent complaints, such as requesting attorney fees while representing himself, demanding the establishment of a legal trust fund, and asserting claims such as those under RICO and Business and Professions Code section 17200, even after such claims had been previously been rejected by the court. He persisted in maintaining *That IV* even after the election had been conducted, and brought *That V* 13 months after the election in question had taken place. Early on, he sought

15

temporary and permanent injunctive relief preventing respondents from applying the election rules it had enacted. But he did not actually move for an order until eight months later, negating any plausible claim of irreparable harm. Unsurprisingly, he lost. His behavior during discovery eventually led to several thousand dollars in sanctions.

Appellant also ignored court directions about the formatting of his pleadings, and was admonished again for the same reason months later. The court eventually struck appellant's second amended complaint in *That Consolidated I* for failure to comply. The sheer volume of the pleadings is also indicative of abusive and frivolous tactics, especially when combined with a failure to follow formatting rules designed to increase comprehensibility. Appellant's complaints sometimes ran as long as 80 to 100 pages or more, not including exhibits. Appellant's notice of appeal in *That Consolidated I* included each and every ruling by the court, including discovery orders. The notice of appeal in this case initially included 33 issues.

A motion or pleading is "frivolous" if it is "so devoid of merit and be so frivolous that they can be described as a '"flagrant abuse of the system,"' have 'no reasonable probability of success,' lack 'reasonable or probable cause or excuse' and are clearly meant to '"abuse the processes of the courts and to harass the adverse party than other litigants."' [Citation.]" (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 972.) Continually pleading the same rejected causes of action – indeed, continuing to file new cases at all — was an entirely frivolous tactic in this case. As respondents pointed out in their motion below, appellant's principal complaint appeared to be that certain election rules were illegal. Filing a new case after each election was completely unnecessary to address any such illegality, if it existed, as a single ruling in a single case would apply to all future elections. Appellant only needlessly complicated the situation by filing action after action. We have little doubt that but for the vexatious litigant order, he would have continued to do so.

16

We have also gleaned from appellant's briefs that he believes there is some hierarchy between "procedural rights statutes" and "substantive rights" statutes. Because the vexatious litigant statute is merely procedural, he claims, it is therefore somehow subservient to a substantive rights statute such as the Act. Appellant's argument has no legal basis, and the cases he cites are completely off point. None of them stand for the proposition that he asserts. Nor, in fact, does his argument make any sense. If the vexatious litigant statute must give way every time a statute provided for a substantive remedy, it would be the exception that swallowed the rule. If the Legislature had intended the vexatious litigant statute to only apply in rare cases where a substantive remedy was not at issue, surely the statute would say so. Appellant's argument, such as it is, is therefore rejected.

Finally, we note that as early as March 2008, while only *That Consolidated I* was pending, respondents attempted to settle this matter. According to their section 998 offer, they proposed reinstating appellant as a Board member, forgiving the special assessment levied against him, and leaving each party to pay their own fees and costs. Appellant, obviously, did not accept, despite this offer addressing his primary grievance — his unseating from the Board. Instead, he continued prosecuting *That Consolidated I* until he lost on nearly every issue, and went on to file the additional cases. His opponent was not a gigantic business entity who could readily afford to defend these cases, but a fairly small homeowners association. The costs of litigation were specially assessed to the members, including, ironically, appellant, who wound up paying for a portion of respondents' defense. His conduct after being declared a vexatious litigant only demonstrates the correctness of the order in retrospect. Appellant was so intransigent with respect to discovery that it led to dismissal of all of three actions and left respondents with over $300,000 in attorney fees in the consolidated cases alone.

17

It is time for appellant's vendetta to end, and for respondents to be free from litigation that does not have at least some minimal merit as determined by the presiding judge. The court's order was amply supported by the evidence and within its discretion.

### III

### DISPOSITION

The order is affirmed. Respondents are entitled to their costs on appeal.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

18